CASE 64.—MANDAMUS BY J. T. SCOTT AGAINST BOARD OF TRUSTEES OF THE TOWN OF NEW CASTLE, CONSOLIDATED WITH LIKE APPLICATION FOR MANDAMUS BY C. V. GENTRY AGAINST J. F. PEYTON.—May 3.

# Board of Trustees Town of New Castle v. Scott, &c. Gentry v. Peyton, &c.

| 125 | 545 |
| f128 | 316 |
| e128 | 319 |
| f128 | 320 |

| 125 | 545 |
| s132 | 620 |

Appeal from Henry Circuit Court.

R. F. PEAK, Circuit Judge.

Appeal from Lincoln Circuit Court.

B. F. ROACH, Special Judge.

Judgment in the Henry county case reversed and affirmed in the Lincoln county case.

1. Intoxicating Liquors—Local Option—Constitution—Construction—Const., section 61, provides that the General Assembly

vol. 125—35.

shall by general law provide a means whereby the sense of the people of any county, city, town, district, or precinct may be taken as to whether or not spirituous, vinous, or malt liquors shall be sold, bartered, or loaned therein, or the sale thereof regulated. Held, that such section should be construed to mean that the local units named should control within their own territory the question of prohibition, and that each should have the privilege of saying conclusively that prohibition should prevail, but not conclusively that it should not.

2. Same—Under Const., section 61, providing that the General Assembly shall by general law provide for local option elections, but that nothing in the act should be construed to interfere with or to repeal any law in force relating to the sale or gift of liquors, it was competent for the Legislature to. provide by general law for repealing, or modifying the existing local laws continued in force by the Constitution, and to allow this to be done by the vote of such locality as the Legislature elected to adopt.

3 Same—Effect of Vote—Discrimination—Const., section 61, authorizes the General Assembly to provide a means whereby the sense of the people of any county, city, town, district, or precinct might be taken as to whether or not spirituous, vinous, or malt liquors should be sold, bartered, or loaned therein, or the sale thereof regulated, but that nothing should be construed to interfere with or repeal any law in force relating to the sale or gift of such liquors. Held, that Ky. Stats., 1903, section 2560, as amended by Act March 14, 1906 (Laws 1906, p. 86, c. 21), providing that when an election is held in the entire county, and results in prohibition, it should not be lawful to sell, barter; or loan liquors in any portion of the county, but that, if it resulted in favor of the sale of liquors, it should not legalize a grant of license in any territorial division of the county from which the sale, barter, or loan of liquors has been excluded by an election within the act, was a proper exercise of legislative power, though it discriminated in favor of prohibition.

4. Same—New Elections—The statute authorizing a second vote on the question of local option within three years after a vote had been taken had reference to an election in the identical territory covered by the former vote.

5. Statutes—Subjects—Classification—Ky. Stats., 1903, section 2560, as amended by Act March 14, 1906 (Laws 1906, p. 86, c. 21), providing for the holding of local option elections, regulates the time for holding such elections in towns, cities,

districts, or precincts, and in entire counties, differentiating between counties having cities of the fourth class or larger and those not having cities within the fourth class. Held, that such classification was proper.

6  Intoxicating Liquors—Power of Legislature—The Legislature is entitled to regulate the liquor traffic in any manner not prohibited by the Constitution.

7.  Same—Local Option Elections—Statutes—Equality of Elections —Ky. Stats., 1903, section 2560, as amended by Act March 14, 1906 (Laws 1906, p. 86, c. 21), providing that; if an entire county votes for prohibition, liquors can not be legally sold throughout the county, but that, if a county votes for license, such vote shall not authorize the sale of liquors in precincts, cities, etc., within the county having voted for prohibition, was not objectionable as destroying the equality of the election, in that more force is given a vote in favor of prohibition than to one against it; the force being given to the result of the election in either instance, and not to the votes therefor.

8.  Statutes—Amendment—Repeal—Title—Under Const., section 51, providing that no statute shall be amended by a reference to its title or context, but that the whole section amended must be re-enacted, Ky. Stats., 1903 section 2560, as amended by Act March 14, 1906 (Laws 1906, p. 86, c. 21), entitled "An act to amend section 2560 of the Kentucky Statutes, it being a portion of article 1, c. 81, of the Kentucky Statutes, entitled 'Liquors, Intoxicating,'" was not objectionable, in that the title indicated an amendment of a prior section, while the act, in fact, repealed the old section and enacted a new one.

CAMMACK & PERRY, attorneys for appellant.

POINTS AND AUTHORITIES.

1.  The State legislature has the power to pass any law not prohibited by the Constitution. Section 61 of the Constitution does not provide that when one unit is voting that all the units contained within that unit should have the privilege of voting on the same day so that which ever way that the majority went in the smaller unit so should they be affected.

2.  We can see no reasons why the provisions in the Cammack bill admitting cities of the first, second, third and fourth classes to exercise the privilege of voting as a unit on the same day that the county in which they may be located votes as a unit should render the bill unconstitutional. There are natural and dis-

tinctive reasons why those cities may be exempt from the operation of the law, viz.:

First, the police protection is better in the cities of ·the classes enumerated than the fifth and sixth class cities.

. Second, there are better facilities for the trial and punishment of the violators of the liquor laws in the cities exempted than those not exempted.

Third, if there is a commercial reason why liquor should be sold (which we think doubtful) it exists in favor of the cities exempted and not in favor of those not exempted, and

Fourth, if there are financial advantages to be gained by way of revenues from the sale of liquors (which we think doubtful) the cities exempted are better equipped to receive those advantages and to utilize them.

### AUTHORITIES CITED.

Safety Building & Loan Co. v. Eckler, 106 Ky., 115; Louisville v. Kuntz, 104 Ky., 584; Stone, Auditor, v. Wilson, 19 Ky. Law Rep., 12; Walston, Trustee, &c., v. City of Louisville,·23 Ky. Law Rep., 932; Humboldt Building Association v. Ducker's Admr., &c., 26 Ky. Law Rep., 932; Cooley's Con. Lim., 5 Ed., pp. 220 and 281; Purnell v. Mann, &c., 20 Ky. Law Rep., 1148; Cumberland & Ohio R. R. Co. v. Barren County Court, 10 Bush, 613; Higgins v. Prater, Sheriff, 91 Ky., 12; Burnsides v.·Lincoln County Court, 86 Ky., 428; Am. & Eng. Enc. of Law, vol. 11, p. 634; Voight v. Board of Excise Comrs., &c., 37 L. R. A., 290; Black on Intox. Liquors, sections 101, 126, 127 and 128; Comth. v. Fowler, 96 Ky., 171; Barth v. McCann, Police Judge, 29 Ky. Law Rep., 709.

WILLIAM CARROLL for appellants.

W. B. BARBOUR, CAMMACK & PERRY of counsel.

### POINTS AND AUTHORITIES CITED.

Some department of the government of necessity has the power to declare the unit of control among warring municipal divisions voting on the liquor question if the Constitution has not done so.

The Constitution is silent as to that.

Such declaration is legislation, therefore the Legislature may declare the unit. It may also declare the effect of the vote of any division; the length of time or the circumstances· under which such effect may continue, and when or under that circumstances such effect shall ·cease or become inoperative.

Board of Trustees Town of New Castle v. Scott, &c.

Such declarations are conclusive, because made in the exercise of the police power; the exercise of such power is not and cannot be denied the Legislature; nor does the Constitution deny to the Legislature such power either in express words or by necessary implication.

If the Legislature fails to declare the unit of control the court may do so if necessary to the determination of the cause in hand.

In the act approved March 14th, 1906, the Legislature has declared the county voting in favor of prohibition, the unit of control and the effect of the county vote in favor of prohibition to be such that thereafter the trustees of towns of the sixth class in said county should not have the authority to license the sale of spirituous, vinous or malt liquors.

Such act is valid and not in conflict with any constitutional provision or with any decision or opinion of the court.

Section 61, Constitution; sections 2554, 2560, 2561, 2563, Ky. Statutes, Act March 14, 1906; Endlich on Interpretation of Statutes, section 329; Cooley on Constitutional Limitations, chapter VII.; Stamper v. Comth., 102 Ky., 38; Brann v. Hart, 97 Ky., 735; McTigue v. Comth., 99 Ky., 72; Comth. v. Hardin County, 99 Ky., 188; Cole v. Comth., 101 Ky., 151; Comth v. Bottom, 22 Ky. Law Rep., 411; Smith v. Patton, 20 Ky. Law Rep., 165; Burnsides v. Lincoln County, 86 Ky., 427.

J. B. PAXTON for appellees.

P. M. McROBERTS of counsel.

### POINTS AND AUTHORITIES CITED.

1. The Geenral Assembly unquestionably has the power to repeal or amend the law regulating the sale, barter or loan of intoxicants, and with the repeal or amendment go all existing privileges that conflict as well as liabilities incurred. Unless there is a saving provision to the contrary, all indictments pending for violation of local option laws abate at the time of their repeal or suspension, on the ground that at the time of trial no law is in existence of which they are violative. (Black on Intoxicating Liquors, section 537.) Then a fortiori must the privileges granted by these laws go with them. The vendors of liquor are given no vested rights. (Black, section 128.) A mere privilege is granted them, which may at any time be revoked. In this State one who has paid for a license, notwithstanding a repeal of the law, may sell until its expiration. (Watts v. Comth., 78 Ky., 329.) But this

opinion, in so far as it extends the privilege of selling until the
expiration of the license, is severely criticised by the text-writers.
(Black, section 101.)  But if appellants' contention is correct, the
law remains in force three years after it is repealed, for the effect
of the act of 1906, as to counties without larger towns than those
of the fifth class, is a repeal of the existing law as to the unit.

2.  Constitutions in this State have been few and far between.
For this reason questions that are solely legislative should find
no place in them, nor should they prescribe hard and fast rules
on matters that it may be desirable to change.  The control of the
liquor traffic should always be left to the people—hence a consti-
tutional provision to that effect.  Time and experience however,
may make it desirable to change the unit—hence that power is
given to the Legislature, with prescribed limits as to the maximum
and minimum of size.  The unit in its discretion may be the
"county, city, town, district or precinct."

Black on Intoxicating Liquors, sections 128, 537, 101;  Watts v.
Comth., 78 Ky., 329;  Francis v. Burnett, 84 Ky., 32;  Bouvier's Law
Dictionary "Or;.' Constitution, section 61.

### ADDITIONAL POINTS AND CITATIONS FOR APPELLEE.

1.  The County Unit Law is constitutional.  (Ky. Constitution,
section 59, subsection 27, section 61;  Stone, Auditor, v. Wilson,
19 Ky. Law Rep., 126;  Commonwealth v. Taylor, 101 Ky., 325;
Winston v. Stone, Auditor, 102 Ky., 423;  Louisville & Jefferson-
vill Ferry Co. v. Commonwealth, 104 Ky., 726;  Ex parte Lichten-
stein, 67 Cal., 359 (56 Am. R., 713);  McEldowney v. Wyatt, 44 W.
Va., 711 (45 L. R. A., 609); Commonwealth of Pennsylvania v. Moir,
199 Pa., 534 (53 L. R. A., 837);  Sutherland on Stat. Com. p. 149,
"Words and Phrases,' title "General Law;"  Commonwealth ex rel.
Barth v. McCann, 29 Ky. Law Rep., 707;  Article 16, section 20, of
Constitution of Texas, section 3395;  Statute Law of Texas;  ex
parte Ripy, 44 Texas Criminal Reports, 72;  Ripy v. Texas, 193
U. S., 504;  Owen County Local Option Act, Acts 83-4, vol. 2, p.
1442;  Sections 9 and 10;  Gayle v. Owen County Court, 83 Ky., 68-9.)

2.  On construction of the act.  Compare section 2560 (repealed
section) with the Act of 1906, p. 86.  (Cole v. Commonwealth, 101
Ky., 151;  Smith v. Patton, 103 Ky., 444;  Commonwealth v. Bot-
toms, 25 Ky. Law Rep., 410.)

3.  On mandamus as a remedy.  (Early v. Rains, 28 Ky. Law
Rep., 415;  Wyatt v. Ryan, 113 Ky., 806.)

OPINION OF THE COURT BY JUDGE O'REAR—Affirming Lincoln county case and reversing Henry county case.

These cases, involving a common question, are heard together and decided together. The question is the constitutionality of the act of March 14, 1906 (Laws 1906, p. 86, c. 21), amendatory of the local option law, and which is commonly called the "Cammack County Unit Bill." The Henry circuit court held the act to be unconstitutional. At least, that seems to be the effect of the judgment and opinion of that court. The Lincoln circuit court held to the contrary.

Section 61 of the Constitution of this State reads as follows: "The General Assembly shall, by general law, provide a means whereby the sense of the people of any county, city, town, district or precinct may be taken, as to whether or not spirituous, vinous or malt liquors shall be sold, bartered or loaned therein, or the sale thereof regulated. But nothing herein shall be construed to interfere with or to repeal any law in force relating to the sale or gift of liquors. All elections on this question may be held on a day other than the regular election days." Chapter 81 of the Kentucky Statutes of 1903 (Carroll's) relates to intoxicating liquors, and articles 1 and 2 of that chapter are set apart to the local option law. Sections 2554 to 2568, inclusive, deal with the manner of putting the law in force. Those sections provide how, and when elections are to be held for taking the sense of the people of the territory to be affected by the vote. Section 2560 dealt with the effect of the vote upon the territory in which the election was held. It was under this statute that the cases which

Board of Trustees Town of New Castle v. Scott, &c.

have come before this court in past years since 1891
have been decided.  Of them we will have occasion
to take notice later in this opinion.

The statute passed at the last Legislature, the
validity of which is the subject of this litigation,
reads:

"An act to amend Section 2560 of the Kentucky Stat-
    utes, it being a portion of article 1 of chapter 81
    of the Kentucky Statutes, entitled, 'Liquors,
    Intoxicating.'

"Be it enacted, etc.

"Section 1.   That section 2560 of the Kentucky
Statutes, it being a portion of article 1, of chapter
81, of the Kentucky Statutes, entitled 'Liquors,
Intoxicating,' be, and the same is hereby, repealed,
and in lieu thereof it is hereby enacted:

"(a) No election in any town, city, district or pre-
cinct of a county shall be held, under this article, on
the same day on which an election for the entire
county is held, except that cities of the first, second,
third and fourth classes may hold an election on the
same day on which an election for the entire county
is held.   When an election is held in the entire county
and a majority of the legal votes cast at said election
are against the sale, barter or loan of spirituous,
vinous, malt or other intoxicating liquors, then it
shall not be lawful to sell, barter or loan any such
liquors in any portion of the county.   If at such an
election for the entire county the majority of the
legal votes cast are in favor of the sale, barter or
loan of any such liquors, such election shall not
operate to make it legal to grant license to sell, barter
or loan such liquors in any territorial division of such
county from which the sale, barter or loan has been
excluded by an election held under this article, or by

Board of Trustees Town of New Castle v. Scott, &c.

special act, but the status of such territorial division shall remain as if no such election had been held.

"(b) No election shall be held in any election precinct under this act on the same day on which an election is held for the district or city of which the precinct is a part. If at an election held for such entire district or city, the majority of legal votes cast shall be in favor of the sale, barter or loan of spirituous, vinous, malt or other liquors, then the status in the several precincts thereof shall remain as it was before said election; but if the majority should be against the sale, then the sale, barter or loan of such liquors shall be unlawful in every portion of said district or city."

The facts of these two cases are as follows: The town of New Castle, in Henry county, is a city of the sixth class. On September 1, 1905, an election was held in that town, under the provisions of the statutes, to take the sense of the legal qualified voters whether spirituous, vinous, or malt liquors should be sold, bartered, or loaned therein. The result was, by a vote of 66 to 65, against prohibition. On June 11, 1906, at an election duly called and held for the entire county of Henry as to whether spirituous, vinous, or malt liquors should be sold, bartered, or loaned therein, prohibition carried by a vote of 1,596 for prohibition to 499 against it. Appellee Scott was a licensed retail liquor dealer in New Castle, and applied to the town council for a renewal of his license after the last-named election. His application was refused by the trustees, and he brought this action for a mandamus against them.

The city of Stanford is a city of the fifth class, in Lincoln county. On June 9, 1906, at an election duly called and held at Stanford, as to whether spirituous,

vinous, and malt liquors should be sold, bartered, or loaned therein, prohibition was defeated by a majority of 44 votes. On September 12, 1906, at an election duly called and held for the entire county, prohibition prevailed by a majority of 1,256. Appellant Gentry was a licensed retail dealer in Stanford, and, after the election in September of 1906, he applied for a renewal of his license, and it was refused. He likewise sued for mandamus against the city council to grant the license; he having complied, as Scott had at New Castle, with all the conditions of the town ordinances and statutes on the subject, and the licenses having been refused solely because the town councils deemed it unlawful to grant them after the county elections in favor of prohibition.

The contentions of counsel who assail the validity of the statute are that it violates the Constitution in at least three particulars: (1) That section 61 of that instrument is a guaranty of right to the municipality, the town, to control for itself, by the vote of its electors, whether or not liquors shall be sold in the town, and that the act now under investigation destroys that option by making it subservient to the option which the county may exercise upon the question; (2) that it violates the section of the Constitution which declares that all elections shall be free and equal; and (3) that it violates sections 59 and 60 of the Constitution, forbidding local and special legislation. There is also an objection that the title of the act is not expressive of its context.

The first of the contentions is manifestly the most important. The others are matters of detail that, if bad, could be remedied by appropriate legislation. But, if the proposition is true that each unit, and particularly the smallest unit, is beyond the control of

Board of Trustees Town of New Castle v. Scott, &c.

any of the others in any event, by virtue of the language of the Constitution, then the matter is at an end until the people shall change the Constitution. In this State the county is in most things the unit of political government. Jurisdiction of courts, venue of actions and of crimes, the assessment and collection of revenue, the laying out and maintaining of public highways, the granting of licenses, the administration of justice through trial courts, the probate of wills, settlement of decedents' and trust estates, the transfer and recording of titles to real estate, the government of common schools, the care of the poor—all matters of government pertaining to the State—are administered in the main, and in some instances entirely, through the subdivision' of the State called the county. The county as a unit of government is older in point of time among the Anglo-Saxon people than either the state or the town. The matter of local self-government with them has always found its most consistent application through the medium of the county. The people have insisted upon, and have kept, the management of certain local affairs which concerned them peculiarly well in their own hands through so many generations, even under different governments, that the matter has come to be recognized as a primal right and a badge of their liberty. Without being so expressed in their Constitution, it has been tacitly recognized and acted upon as a thing so well established, and admitting of no doubt, as that it is found running through every Constitution, and every form of government which they have established in Kentucky, and in Virginia before the separation, that the county was the unit of local government. The New England town system, whatever, its merits, has never found the

Board of Trustees Town of New Castle v. Scott, &c.

place in the South, and in Kentucky, which it has in other parts of the Union. Custom, the habit of a people, is hard to change. The habit of treating the county as the unit of local government is one with us that dates back beyond the colonies. Such inroads as have been made toward centralization in the State, or dispersal of power into smaller parts, have been regarded suspiciously and tolerated in more or less doubt. Ordinarily, it is true that the whole includes all its parts, and is greater than any of them, although it is true absolutely only when applied to mathematics, and to distance, time, and quantity. The county necessarily embraces within its territory every town, city, and precinct organized within it. The population of such subdivision constitutes part of the population of the county. There is no part of any county that is not embraced within some precinct. Towns and cities are likewise divided into precincts. So that the smallest unit is the precinct. Yet it is not a unit of government at all. It has not the machinery for government. It has not a single official, or may not have, who is elected by its voters and who performs any act of government whatever. It is only a voting territory, as part of a district, town, city, or county. Precincts are created in the county, by the county, and for the convenience of the people of the county. Towns and cities are organized into governmental bodies by the Legislature Their citizens are not the less citizens of the county wherein the town is located. They owe to the county the same duties, and are entitled to equal privileges, as those who reside outside the town limits.

In this view of the situation: Does the Constitution mean, when it provides that the voters of any county, city, town, district, or precinct shall deter-

mine whether or not intoxicating liquors shall be sold therein, that one unit shall dominate the others? And if so which one? It is certain that a county cannot be a dominant unit ever, if a town, or city, or any precinct therein, may decide the same question for itself, and contrary to the vote of the county as a whole. Nor can a town or precinct be a controlling unit, if the vote of the county to the contrary can overthrow the result in the smaller territory. Constitutions, like other instruments, must be given such construction as will give some meaning, if possible, and a consistent meaning, to every word employed. We must therefore search for that meaning that will not annul the privilege accorded to precincts in this matter, nor emasculate the rights given to the counties, cities, and towns.

It is very earnestly argued that the words "whether or not" mean "may or may not;" that any precinct may vote liquor in or vote it out. That argument would make the precinct not only the controlling unit, but the only unit in the matter. Obviously, if a precinct in a town votes "wet," as it is called if the proposition be carried in favor of the sale of liquors, then the town is wet to every intent and purpose as a town. So is the county. And as in that event any adverse vote of the town or county, by whatever majority, would be futile to affect the result or that status created by the vote of the precinct, it would be useless to take the vote except in the precinct. As this result is destructive of the autonomy of the county, and of the city and town, expressly given it by section 61 of the Constitution, it must for that reason alone, if for no other, be rejected. On the other hand, to say that the larger territory shall

Board of Trustees Town of New Castle v. Scott, &c.

dominate the smaller, because it includes the smaller, and as more consistent with the theory and form of government adopted in this State, is open to the same objection as that urged above. Whichever end of the subject might be taken under such an argument, the result would lead to the destruction of the other units named in the section. There must have been some sense in which the words are used in the section of the Constitution under examination that will admit of all of them standing for something. There must be some condition under which it is possible to give effect to every unit made by that section, so that there might be a time when any one of them could dominate all others, should their views be in conflict.

Our present Constitution is an eminently practical instrument. It deals less with abstractions, and more with actual conditions, than any previous document of the kind in this State. The old Constitution was found inadequate, not in its principles, but in practical matters affecting the public welfare. The Convention was called in the light of experience to correct deficiencies, and it did it. It was never contemplated by anybody, in or out of the Convention, that there was occasion for, or purpose to, abridge the police power of the State, that quality of sovereignty that is sometimes likened to self-protection in the individual. Nor was it ever argued that the State ought to or could take away from the Legislature that power which is the very basis of the State's right to declare what is criminal, or otherwise hurtful to society, and to prohibit; control or punish it. No other subject had been more clearly settled upon as being within the legitimate exercise of the police power of the State than the regulation of the sale and use of intoxicating liquors. In some communi-

ties, it had been prohibited by acts of the Legislature; in others, licensed and otherwise controlled by the same authority; in yet others, the question whether such traffic was to be allowed at all was submitted by the Legislature to the people immediately affected. The territory varied according to legislative discretion—sometimes a county; sometimes a portion of a county, or two adjoining counties; sometimes a city or town, or even a single precinct. But it was never submitted to a vote whether liquors should be sold in any locality without a license, or free of regulation. The only thing that ever has been submitted is: Shall the sale be prohibited? If the vote is that it shall not be, then the sale is nevertheless subject to police regulation by the State; it is subject to payment of a license; it is restricted to territory not forbidden by law (as, e. g., not within a mile of a church or schoolhouse); it is prohibited as to minors and inebriates; it is regulated as to time (for example, may not be sold on Sunday, or on any election day). In fine, the effect of a wet vote has always been construed to be that the Legislature is then left a free hand to deal with the traffic in such community as may seem to it to be expedient. But when the vote has been "dry," as it is called when the proposition is carried in favor of prohibition, all laws regulating the traffic are inoperative there for want of a subject to apply to.

The natural status of the situation in this State, before any legislation on the subject, was that anybody had the right to sell liquors anywhere. to anybody, and at any time. The State has, upon the idea that the public peace, the public health, and the public morals demanded it, been gradually, but constantly, restricting the traffic. General laws now re-

Board of Trustees Town of New Castle v. Scott, &c.

quire licenses to sell at all. They are granted only
to select persons, and only at selected places. The
licensees must pay for the privilege, and engage
against infractions of the law by themselves or at
their places of buisness. But it is recognized that
these precautions of a police nature are not adequate
always. So, by general law, it is provided that no
license shall be granted to retail liquors in a rural
community—that is, outside of an incorporated city
or town—except to tavern keepers and druggists. So
if there is not an incorporated city or town, or a
licensed tavern keeper or druggist in a precinct or
county, no matter how the vote may be on the subject
of local option, by legislative fiat prohibition prevails
there. It was not then necessary to have a vote of
the people to authorize the sale of liquors; nor does
their vote in favor of it authorize it in spite of the
legislative will fairly exercised under the police
power of the State.

There is yet another view of the subject which we
must assume was in the mind of the Convention. The
liquor traffic had then (in 1891) come to be regarded
as one of the most serious evils of the age, if not the
most sinister menace to society that was known.
Every civilized country regulated it, or prohibited it.
Enlightened public opinion everywhere has con-
stantly grown in favor of greater restrictions upon it.
No one was then saying that governmental control
of the traffic should be relaxed in the least. Every
argument pointed to a more stringent control. The
main division in the controlling public thought was
not upon whether there should be greater or less
restriction, but as to how to put on the surer and
greater restriction; whether a high license. or pro-
hibition. The Convention was not prepared to say

that prohibition throughout the State should be attempted, but recognized that the people of the communities immediately affected by the traffic should for themselves say whether they would have prohibition. At the time the Constitution was adopted, prohibition prevailed in a number of the counties and towns of the State by virtue of special laws previously enacted by the Legislature. Section 61 of the Constitution, which required the Legislature to provide by general law for local option elections, was careful to say that the previous special statutes for certain localities were not repealed by that section. All those special statutes provided prohibition in the localities specified. The purpose of the Convention is shown by this action to have been not inimical to local prohibition, but rather in its favor. Our construction is, in view of these conditions and the language used, that the Constitution meant that the local units named should control within their own territory the question of prohibition; that each should have the privilege of saying conclusively that prohibition should prevail, but not conclusively that it should not. This construction harmonizes the section so as to allow all of it to stand, and to give equal force and power to each unit named. If a precinct votes that prohibition shall prevail within its territory, it is not competent for any other unit to gainsay the matter. If, however, the precinct votes against prohibition, that leaves the question, so far as it is concerned, as it was before any vote was ever taken on it. But, if the town or city which includes the precinct in question subsequently votes in favor of prohibition, the whole town or city thereby becomes dry. Or, if the county subsequently votes dry, the same

Board of Trustees Town of New Castle v. Scott, &c.

result as to the county is attained. But if the county or town vote wet, and the precinct has previously voted dry, the precinct controls for itself. Thus each unit for itself has the option of putting the prohibition law into effect within its territory, and no larger or smaller unit can prevent it. This is the only construction of the section that occurs to us, or that has been pointed out, that will allow equal and uncontrolled power to every one of the five units named in the section.

A similar provision in the Constitution of Texas was construed as we in this opinion construe section 61 of this State. See Ex parte Rippy, 44 Tex. Cr. R. 72, 68 S. W. 687. Under the old statute, it was held (Cole v. Commonwealth, 101 Ky. 151, 19 Ky. Law Rep. 234, 39 S. W. 1029) that towns and cities might vote on the same day as counties, and the vote of the former on the question controlled as to them, because there was no provision found in the statute to the contrary. The present act, to meet precisely that defect in the former, does, as to counties of a certain class, provide that towns, cities, and precincts shall not vote independently on the same day that the county votes on the subject. The effect is, and the purpose was, to regulate the time when the votes might be taken in such communities. The differentiation in favor of a vote for prohibition either in the larger or smaller unit is maintained in the present act in some other respects as in the old one. A number of cases before this court since the adoption of the existing Constitution have presented, in one form or another, various features of the local option question. Certain expressions have been culled from the opinions, and are cited to sustain different views concerning section 61 of the Constitution. A full and careful

examination of the cases leads us to the conclusion
that there is no lack of harmony in the points actually
decided, and nothing decided in any of them incon-
sistent with the principle upon which we rest this
decision. Until the passage of the Cammack county
unit bill, there had never been a statute in this State,
under the present Constitution, whereby the county
could have been the exclusive unit, in spite of the con-
current contrary action of the smaller units. The
vital point in every one of the opinions making any
expression on this subject shows that to be the recog-
nized fact.

In Brown v. Commonwealth, 98 Ky. 652, 34 S. W.
12, 17 Ky. Law Rep. 1216; Lafferty v Huffman, 99
Ky. 89, 18 Ky. Law Rep. 17, 35 S. W. 123, 32 L. R. A.
203, and Commonwealth v. Hardin County Court, 99
Ky. 188, 18 Ky. Law Rep. 113, 35 S. W. 275, it was
held that the local prohibition statutes enacted before
the Constitution of 1891 might be repealed either by
an inconsistent general law of the Legislature on the
subject, or by a vote in the smaller units held within
the territory under the general local option law. In
Cole v. Commonwealth, 101 Ky. 151, 39 S. W. 1029,
19 Ky. Law Rep. 234, Scott county petitioned for a
local option election for the whole county. George-
town petitioned for a separate election on the same
day. The result was the county went dry, while the
city went wet. The question for decision was: Was
the city entitled to a separate election on the same
day, and to control the question of its own status? It
was held that, under the terms of the statute. it was
so entitled. In Commonwealth v. Bottoms. 57 S. W.
493, 22 Ky. Law Rep. 410 (withdrawing the former
opinion delivered in the same case, 50 S. W. 684, 20
Ky. Law Rep. 1929), and in Tousey v. Stites, 66 S.

Board of Trustees Town of New Castle v. Scott, &c.

W. 277, 23 Ky. Law Rep. 1738, it was held that, because of sections 2560 and 2563, Ky. Stats., 1903, it was not competent for a smaller unit to vote on local option within three years after prohibition had been carried by the larger unit of which it was a part. In Smith v. Patton, 103 Ky. 444, 20 Ky. Law Rep. 165, 45 S. W. 459, Cole v. Commonwealth, supra, is approved. It was held that a county would hold a local option election for the entire county after certain of its precincts had voted, but that, if held within three years, the result previously established within the precincts was not affected by the county vote, because the statute said it should not be. In Stamper v. Commonwealth, 102 Ky. 33, 42 S. W. 915, 19 Ky. Law Rep. 1014, deciding mainly a question in no wise involved here, it was said by Chief Justice Lewis that the Constitutional Convention intended to submit to the localities whether prohibition should prevail. In George v. Winchester, 118 Ky. 429, 26 Ky. Law Rep. 170, 80 S. W. 1158, Clark county had, in 1896, voted in favor of local option. More than three years thereafter a precinct in Winchester had another vote, and voted wet. This was in accordance with the statute, and it was held where a city council was given discretion to grant licenses, where the local option law was not in force, it could not exercise its discretion arbitrarily. Following Riley v. Rowe, 112 Ky. 817; 23 Ky. Law Rep. 2169, 66 S. W. 999; in Early v. Rains, 89 S. W. 289, 28 Ky. Law Rep. 415, the questions for decision were: (1) Whether a failure to provide registration for a local option election, whereby certain legal voters were prevented from voting, was a compliance with the Constitution and the statutes regulating elections. It was held not to be a com-

Board o. Trustees Town of New Castle v. Scott, &c.

pliance. (2) Whether a town situated partly in two
counties could have a separate vote on local option;
the counties not having voted on the question. It
was held that the town was entitled to the election.
That election was also held under the statute of 1892.
There was a statute then in force and is now, to this
effect: Section 2563, Ky. Stats., 1903: "The elec-
tion or elections herein provided for shall not be held
for any county, city, town, district or precinct oftener
than once in every three years."

A fair construction of all those opinions, in the con-
nection with section 61 of the Constitution, is that
the Constitution meant to leave, and did leave to, the
Legislature, the details of the law to be enacted to
carry the provision of the Constitution into effect.
In view of the changing conditions of the future, the
wisdom of the Legislature could best determine when
the conditions arose as to how often and in what
rotation votes in the respective localities might be
taken on the subject. It was therefore competent for
the Legislature to provide by general law for repeal-
ing or modifying the existing local laws continued in
force by the Constitution, and to allow it to be done by
vote of such locality as the Legislature saw proper.
The reason no subsequent election in any other unit
could change the result in the given unit was the
statute withheld such effect. Nor are we now de-
parting from anything actually decided in any
previous case before this court. The Legislature has
now for the first time enacted a law in which it does
give a controlling vote to a locality—to each of the
units named—in the event it votes for prohibition,
over other units mentioned, which may not have
voted, or may have voted previously against prohibi-
tion. The question is now raised and presented for

decision for the first time whether, under section 61 of the Constitution, it has the power to make such discrimination. We answer that it has. It has it because it is not denied to it by the Constitution; but, on the contrary, as there must otherwise be a conflict between some of the units under certain conditions, it is by implication vested in the Legislature to declare in such event which shall prevail. It has it because it inheres in the nature of the subject, and by virtue of the overpowering quality of the police power of the State which is vested in the lawmaking body of the government. And it has it, as we think we have pointed out, in the evident purpose of the Convention to further, and not to hinder, the restrictions that the people might see proper to place upon an article so destructive to the morals, health, and safety of the public.

At this point, we may say that the act under examination was intended to change the law as to the effect of a vote on prohibition. Under the statute that was repealed by this act, a vote against prohibition was given the same effect as a vote in favor of it; but the present act intended to give a different effect, by allowing each unit a chance—without regard to any previous vote taken in any other unit—to adopt prohibition. So, without reference to when the vote was taken in a city or precinct, which resulted in a majority against prohibition, any other unit, either including or included by the territory just mentioned, may vote for itself on the proposition, and, if it votes in favor of it, prohibition in counties of the class to which Henry and Lincoln belong becomes effective in that territory. Therefore, although New Castle and Stanford had shortly before refused to vote prohibition, the counties in which they were

situated had the right to immediately vote on the
subject as a whole. The statute, prohibiting a second
vote within three years, has reference to an election
in the identical territory; but we do not express an
opinion as to whether, if a whole county has voted
prohibition, after three years any precinct or town
may not have another vote to change the existing
conditions.

Section 59 of the Constitution prohibited the Legis-
lature from passing special acts (subsection 27) to
provide a means of taking the sense of the people of
any city, town, district, precinct, or county whether
they wish to authorize, regulate, or prohibit therein
the sale of vinous, spirituous, or malt liquors, or
alter the liquor laws. And section 60 reads in part:
"The General Assembly shall not indirectly enact
any special or local act by the repeal in part of a gen-
eral act, or by exempting from the operation of a
general act any city, town, district or county; but
laws repealing local or special acts may be enacted."
It is argued that the Cammack bill violates these sec-
tions, in this, that it repeals a general law in part
(section 2560, Ky. Stats., 1903), and enact a statute
regulating the liquor traffic so as to indirectly make
it apply to certain cities, and directly exclude others.
The act regulates the time for holding local option
elections in the several units. It differentiates be-
tween counties having cities of the fourth class or
larger, and those not having cities as large as the
fourth class. Is this classification repugnant to the
Constitution?

It is clearly competent for the Legislature to pro-
vide by general law different times for holding the
elections in the different units. No one seems to
dispute that. The Legislature might rest a dis-

Board of Trustees Town of New Castle v. Scott, &c.

tinction as to time upon the condition of the units.
For example, more frequent elections might be
allowed in more densely populated communities,
whose population changes frequently, or, in those
communities where police regulations are capable of
better enforcement. We perceive no reason for hold-
ing that the Legislature might not regulate the liquor
traffic in any manner not prohibited by the Constitu-
tuoin. The frequency of elections that may be held
upon the subject of local option is left an open ques-
tion by the Constitution, therefore it is committed
to the Legislature. Clearly, then, that body must
determine not only how frequently the vote may
be allowed, based upon its judgment of necessity and
propriety, but may regulate the matter as it applies
to different localities. The only constitutional re-
strictions upon the subject are that the local com-
munities shall have an option in putting prohibition
into effect, and whatever laws that are passed upon
the subject shall be general laws. No law applies to
every subject, or to every class of people, although
it may possibly affect every class. The classification
of communities by population for many purposes is
natural and reasonable. The Constitution itself
adopts that standard of classification as to indebted-
ness, rates of taxation, representation in the General
Assembly, as to composition of courts, and the classi-
fication of cities with different powers and forms of
government. All matters of mere police regulation
may properly be so classified, and the control of the
liquor traffic belongs to that category. It is not true,
as argued, that the law now in question applies only
to counties having cities of less than the fourth class.
It applies to all counties; but in counties having
larger cities it allows such cities as separate units to

vote upon the question of prohibition at the same time that the counties in which they are situated may vote.   It provides for making such cities a unit, not to be controlled in any event by the counties, unless they fail to avail themselves of the privilege of voting separately.   It is an exercise by the Legislature of the discretion of selecting the means and manner of carrying section 61 of the Constitution into effect. The act is not local or special, but is a general law.

The other particular objection to the act is that it destroys the equality of the election, in that it gives more force to a vote in favor of prohibition than it does to a vote against it.   All votes have precisely the same weight in the election.   No one's vote counts for more than another's on that occasion.   After the status is created by a majority of the votes—each vote being accorded equal potentiality in the election —the Legislature has then provided that the status of prohibition may not be subsequently altered, except in a certain way; but that the status of a failure to prohibit may be altered earlier, or by the action of the larger unit|   This is in no sense giving one vote a different weight in the matter of the election than another's, but is merely providing for the very condition that in our opinion was contemplated by section 61 of the Constitution.   Similar provisions have been held not to infringe on the freedom and equality of elections.   Gayle v. Owen County, 83 Ky. 68, 6 Ky. Law Rep. 789; Rippy v. Texas, 193 U. S. 504, 24 Sup. Ct. 516, 48 L. Ed. 767.

The title of the act is said to be insufficient because that act does not amend section 2560, Ky. Stats., 1903, but repeals that section, and substitutes another provision for it.   A statute cannot, under the Constitution, be amended in the manner formerly followed,

and which by parliamentary procedure is deemed sufficient; that is by reference to its title, or to the context. But the whole section amended must be re-enacted. Section 51, Const. Section 2560 of the Statutes is amended in that way. The same subject is treated of. Some parts of it are changed, others left intact, and substitutions made for others. This is a compliance with the Constitution. The title calls attention to what section of the statute is to be directly affected by it, and is a perfect compliance with the constitutional requirement.

Wherefore we conclude that the judgment in the Lincoln county case should be affirmed, and that the judgment of the Henry county case should be reversed, and the latter case is remanded for proceeding consistent with this opinion.