## Young, et al. v. Trimble, et al.

(Decided April 20, 1915.)

Appeal from Montgomery Circuit Court.

## Hiter, et al. v. Waddy, et al.

Appeal from Shelby Circuit Court.

## Brannon, et al. v. Myall, et al.

Appeal from Bourbon Circuit Court.

## Lancaster, et al. v. Thacker, et al.

Appeal from Scott Circuit Court.

1. Intoxicating Liquors—County Unit Law.—Under section 61 of the Constitution the Legislature had the power to enact what is known as the "county unit law," giving to the county the right to control and regulate the sale of liquor in all cities, towns, districts and precincts within the county.

2. Constitutional Law—Construction—Stare Decisis.—When a construction placed by the judiciary on an administrative section of the Constitution has received the approval of the legislative as well as the executive departments of the government and of the people speaking through them, it should be adhered to as a part of the settled and satisfactory public policy of the State.

3. Statutes—Construction of Sections 2554 and 2560.—The act of 1914, now sections 2554 and 2557 of the Kentucky Statutes, did not repeal the act of 1912, now section 2560 of the Statutes. Each of these sections had its place in the scheme of regulation and neither of them should be construed to repeal the other.

4. Statutes—Construction of Repealing Clause.—A repealing clause should be read and construed to harmonize with the title and body of the act and confined to the purpose of the act as expressed in

the title and the body and not be construed to extend the scope of the act beyond the purpose expressed in the title and body.

5. Courts—Orders of County Court—Signing of.—The fact that the county judge did not sign the orders calling a local option election until after it had been held, did not affect its validity.

6. Courts—Special Terms of—Appeals May Be Tried at.—Where an appeal from the county court was filed in the circuit court on January 9th, and summons issued returnable to the next regular term commencing in March, the appeal could be tried at a special term called for that purpose in February. An appeal is pending from the time the record is filed, and the court has the same power to call a special term to hear and dispose of an appeal pending as it has to call a special term to hear and dispose of a case originally brought in that court.

HAZELRIGG & HAZELRIGG, KOHN, BINGHAM, SLOSS & SPINDLE, W. W. WATTS, L. F. SINCLAIR and C. G. BARRICKMAN for appellants.

O'REAR & WILLIAMS, JOHN G. WINN, JAMES B. FINNELL, JR., CLINE & HUTCHCRAFT and W. T. BECKHAM for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming in each case.

These several appeals involve the validity of liquor elections, held under what is known as the "county unit law," in the counties of Montgomery, Shelby, Bourbon and Scott. The election in each of these counties resulted in a majority of the votes being cast against the sale of liquor, and the election in each county was contested by those favoring the sale of liquor. On a trial of these contests in the circuit courts of the several counties, the validity of each of the elections was sustained, and from the judgments so holding these appeals are prosecuted.

There are two principal grounds urged for reversal that are common to each case, and for this reason the appeals were heard together, and will be disposed of in one opinion. One ground attacks the county unit law as being violative of Section 61 of the Constitution, and the other raises the question that the act of 1912, now Section 2560 of the Kentucky Statutes, was repealed by the act of 1914, now Sections 2554 and 2557 of the Kentucky Statutes.

Section 61 of the Constitution, in obedience to which the various laws for the regulation of the liquor traffic have been enacted, reads as follows:

"The General Assembly shall, by general law, provide a means whereby the sense of the people of any county, city, town, district or precinct may be taken, as to whether or not spirituous, vinous or malt liquors shall be sold, bartered or loaned therein, or the sale thereof regulated. But nothing herein shall be construed to interfere with or to repeal any law in force relating to the sale or gift of such liquors. All elections on this question may be held on a day other than the regular election days."

Prior to 1906 this section and the legislation of 1894 to give it effect came before this court for construction in the cases of Cole v. Com., 101 Ky., 151; Com. v. Bottoms, 22 Ky. L. R., 410; Smith v. Patton, 103 Ky., 444; George Brothers v. City of Winchester, 118 Ky., 429; and Early v. Rains, 121 Ky., 439; and it was held, in effect, in these cases that under this section of the Constitution the city, town, district and precinct was each an independent unit, with the right to control and regulate for itself the liquor traffic within its territory, free from the dominion of any larger unit in the territory of which the smaller unit was a part; or, in other words, that the county could not control the wishes of the city, town, district or precinct within the county.

This idea was expressed in the Cole case as follows: "It is the contention of the State that no separate election in the city can be had on the proposition involved at the time of an election throughout and for the entire county on the same question, and if such an election be held it is ineffective for any purpose, and must yield to and be controlled by the result of the county election. 'Otherwise,' say counsel, 'each district might do the same thing, and the county as a whole might vote in favor of local option, and yet every precinct in the county except one vote in favor of license, the result being that the county as a whole might vote against the sale, yet in nineteen-twentieths of it such liquors might be sold.'

"This may be conceded, but, instead of being an argument against the position of appellants, it furnishes a strong argument in its favor. For, if such liquors may be so sold, it is because the voters of these precincts, upon whom the right is conferred to settle the question for themselves, desire them to be sold. The local feature of the statute is kept prominent in every part of it.

Each subdivision in emphatic terms is given a right to determine for itself its local wants, and if it may not do so independently of other local preferences, it is denied a right expressly given by the language of the law.

"It may be said, and truly, that the same right is given the county, but if, simultaneously with the exercise of its right to vote on the question, a smaller and independent subdivision of the county, upon which is also conferred the right to exercise its choice, does exercise it with different results, there is no other way to uphold the law in its entirety than to treat the territory of the smaller subdivision as excepted from the domination of the larger, if it chooses to act independently."

And in the City of Winchester case as follows: "Section 61 of the Constitution makes it the duty of the General Assembly to provide by general law a means whereby the sense of the voters of any county, city, town, district or precinct may be taken as to whether or not spirituous, vinous and malt liquors shall be sold, bartered or loaned therein, or the sale thereof regulated. As required by that section, the General Assembly passed a local option law for the State. The General Assembly has left to the decision of each local community under which of two policies it shall live—the license system or prohibition—and authorized the people to take a vote at certain intervals, and thus change from one system to the other as they see proper."

And in the Rains case as follows: "The citizens who are legal voters in the territory alone can take the initiative in the matter, and they determine the extent of territory or unit to be affected by the proposition; that is, whether it shall be a whole city or town, or merely one or more precincts of the county or city. This follows the requirement of the Constitution, which gives the right to a city or town as a whole to allow or prohibit the liquor traffic within its limits. In view of the language of Section 61 of the Constitution, it is not permitted to the Legislature to deny a town or city the right to vote on this subject as a whole. Nor has the Legislature attempted to deny or abridge the right."

That Section 61 of the Constitution was reasonably open to the construction placed on it in these cases the merest reading of the section shows.

But in 1906 the Legislature enacted the first county unit law, and this legislation gave to the county as the

larger unit the right to control the action of the smaller units within the county, such as the city, town, district and precinct. The validity of this legislation, which conflicted with the construction placed on Section 61 of the Constitution in the Cole and other cases mentioned, has been upheld in so many cases decided since 1906 that we might well rest the opinion on this point without further elaboration on what we conceive to be the controlling authority of these cases decided since 1906. In view, however, of the large number of persons and the large interests affected by these appeals, and the insistence of counsel for the appellants that the proper construction of this section of the Constitution should be again considered by the court, we have thought proper to briefly review what has been said upon this subject both by the legislative department of the State and this court, for the purpose of determining whether the construction favoring the validity of the county unit legislation should be adhered to or the construction first adopted restored.

Following the adoption of the Constitution, in 1894, the Legislature enacted a law to take the sense of the people of any county, city, town, district or precinct as to whether liquor should be sold therein. This legislation is contained in Sections 2554-2568, inclusive, of the 1894 edition of the Kentucky Statutes. Section 2554 of the 1894 edition of the Kentucky Statutes, which was the first section of this act, provided for the submission to the voters in any county, city, town, district or precinct of the question whether they desired to permit or prohibit the sale of liquor in the county, city, town, district or precinct in which the question was submitted. The other sections, excepting 2560, made provision for matters relating to this subject that it is not necessary here to consider.

Section 2560, although recognizing the right of the entire county to vote, also provided for the saving from the effect of the vote of the county as a whole the right of the cities, towns, districts and precincts in the county to regulate for themselves the liquor traffic.

These sections, that is, 2554 and 2560, remained as they were enacted in 1894, without alteration or amendment, until 1906. In 1906 Section 2560 was amended, and this amendment introduced into the law for the first time the county unit feature. In other words, except as to cities of the first, second, third and fourth classes, it

made the county the controlling unit by providing that
when an election was held in an entire county, and the
majority of the legal votes cast at the election were
against the sale of liquor, it should not be lawful to sell
it in any portion of the county except in the cities named,
where it might be sold if a majority of the voters fa-
vored the sale. When Section 2560 had been thus
amended, the question of the power of the Legislature
to enact legislation making the county the controlling
unit, and to deny to cities, towns, districts and precincts
within the county the right to regulate for themselves
the sale of whiskey, which right had been recognized in
the previous legislation and decisions, came before this
court in the case of Board of Trustees of the Town of
New Castle v. Scott, 125 Ky., 545. In that case, in which
the legislation was sustained, it was said, speaking of
the opinions in the Cole, City of Winchester and Rains
cases:

"A fair construction of all those opinions, in con-
nection with Section 61 of the Constitution, is that the
Constitution meant to leave, and did leave, to the Leg-
islature the details of the laws to be enacted to carry
the provision of the Constitution into effect. In view of
the changing conditions of the future, the wisdom of
the Legislature could best determine when the conditions
arose. as to how often and in what rotation votes in the
respective localities might be taken on the subject. It
was, therefore, competent for the Legislature to provide
by general law for repealing or modifying the existing
local laws continued in force by the Constitution, and
to allow it to be done by vote of such locality as the
Legislature saw proper. The reason no subsequent elec-
tion in any other unit could change the result in the
given unit was that the statute withheld such effect. Nor
are we now departing from anything actually decided in
any previous case before this court. The Legislature has
now for the first time enacted a law in which it does
give a controlling vote to a locality—to each of the units
named—in the event it votes for prohibition, over other
units mentioned, which may not have voted, or may
have voted previously against prohibition. The ques-
tion is now raised and presented for decision for the first
time whether, under Section 61 of the Constitution, it
has the power to make such discrimination. We answer
that it has. It has it because it is not denied to it by

the Constitution; but, on the contrary, as there must otherwise be a conflict between some of the units under certain conditions, it is by implication vested in the Legislature to declare in such event which shall prevail. It has it because it inheres in the nature of the subject, and by virtue of the overpowering quality of the police power of the State which is vested in the law-making body of the government. And it has it, as we think we have pointed out, in the evident purpose of the Convention to further, and not to hinder, the restrictions that the people might see proper to place upon an article so destructive to the morals, health, and safety of the public.''

It is, however, manifest that in this opinion the court declined to follow the rule of construction adopted in the Cole and like cases, and, in effect, overruled these opinions. But this change of position only illustrates what has been time and again commented on, that it is not possible to draft a section of the Constitution, dealing with practical affairs, that will not be found susceptible of more than one construction when it comes to be applied through legislation to the condition it was intended to affect. The county unit legislation presented a new feature, calling for a new construction of Section 61, and thus brought to the attention of the court directly for the first time the question whether, under this section, it was competent for the Legislature to make the county the controlling unit. And when the court was thus compelled to either recognize this legislative power or deny it by adhering to the former construction, it adopted the course indicated and gave to Section 61 a broader and more beneficial meaning than had been placed on it in the previous case. Under the new construction the people were given larger power to control effectively the local traffic in intoxicating liquors than they had under the old construction, and that this larger control has served a good purpose is undeniable.

The ruling in this case has since been followed uniformly and without any deviation in O'Neal v. Minary, 125 Ky., 571; Yates v. Nunnelly, 125 Ky., 664; Eggen v. Offutt, 128 Ky., 314; Edwards v. Porter, 141 Ky., 314; McAuliffe v. Helm, 157 Ky., 626; and Welch v. Irvine, 158 Ky., 798. So that if any question directly involving the construction of a section of the Constitution and a statute enacted in pursuance thereof can be said to be

definitely settled by the opinions of a court of last resort, then this question has been so settled.

But notwithstanding the ruling in this consistent line of cases it is now earnestly contended by distinguished counsel that these decisions, extending over a period of several years, should be overruled and the construction that was adopted in the Cole and other like cases should be restored. But we are not disposed to set aside or depart from the construction announced in the New Castle case and the ones that followed it. This construction has been approved by the legislative as well as by the executive departments of the government, as is shown by the legislation enacted subsequent to 1906, and when a construction placed by the judiciary on an administrative section of the Constitution has received the approval of the legislative as well as the executive departments of the government, and of the people speaking through them, it should be adhered to as a part of the settled and satisfactory public policy of the State.

We may, therefore, close this branch of the case with the final statement that the Legislature had the power under the Constitution to enact the county unit legislation of 1906, and this being so, it had the power to enact the county unit legislation of 1912, w? ich merely amended the act of 1906 so as to bring the cities of the first, second, third and fourth classes, that had been exempted by the act of 1906 from the operation of the county unit law, under the effect and control of the county as the controlling unit.

This conclusion disposes of the asserted right of the cities of Shelbyville, Georgetown, Mt. Sterling and Paris to have separate elections and to regulate and control for themselves the sale of liquor within their limits. It is wholly immaterial whether they were or were not given the right to hold a separate election, because if they had held a separate election and a majority of the votes in the city had been in favor of the sale of liquor, the vote of the county being against the sale, this vote would nullify the vote of the people in the city. Under the operation of the county unit law the vote in the county controls absolutely all parts of the county, including each city, town, district and precinct therein, and when the county has voted dry no one of these units can by its vote prevent the exclusion of the right to sell liquor in the whole county. When the county acts, it

acts for all of these units within its limits, and its action is conclusive upon all of them.

Passing this, the argument is earnestly pressed on our attention that the Legislature, by the act of 1914, now Sections 2554 and 2557 of the Kentucky Statutes, repealed the act of 1912, now Section 2560. In disposing of this question it will be necessary to review, to some extent, the legislation since 1894.

As previously stated, the act of 1894, in so far as the questions here involved are concerned, remained unchanged until 1906, when Section 2560 was amended in the manner set out. After 1906 no change was made in the statutes we are now concerned with until 1912, when the county unit law of 1906 was amended in the manner stated. But, in 1914, Section 2554, which had not been touched since its adoption in 1894, was amended, and by the same act Section 2557 was amended; but the change made by the amendment of Section 2557 is not material to this discussion and need not be further noticed. Section 2554 was amended only in one particular, and that related to the petition required to be presented to the county judge requesting the calling of an election. Under Section 2554 in the act of 1894 it was held by this court in Smith v. Patton, 103 Ky., 444; Nall v. Tinsley, 107 Ky., 441; Barton v. Edwards, 143 Ky., 713; Horton v. Botts, 158 Ky., 11, and other cases decided both before and after the county unit law of 1906 was enacted, that in calling an election for the county it was necessary to have a petition signed by a number of legal voters in each precinct equal to 25% of the votes cast in the precinct at the last preceding general election. The effect of this requirement of the statute, as held in these cases, was to make it indispensable to the validity of an election held for the county that the petition requesting it should be signed by 25% of the voters in each precinct in the territory to be affected; and so if this number of petitioners could not be secured in every precinct, no election could be held that would affect the territory including that precinct. This act was found by practical experience to enable the voters in one precinct to prevent the calling of an election that would affect the entire county. To remedy this condition, which seriously obstructed the execution of the county unit law, the act of 1914 amended Section 2554 so as to provide that if 25% of the voters of the county signed the petition the

election should be called, although 25% of the voters in one or more precincts might refuse to sign the petition. In short, the only purpose of the amendment was to prevent the voters in one or more precincts from defeating the right to have an election for the entire county.

Except in the particular mentioned Section 2554 as it now appears is exactly as it was enacted in 1894. The act of 1894 provided, as does the act of 1914, that when the county judge has received a petition signed by 25% of the voters in the territory to be affected by the election, "it shall be the duty of the judge of the county court in such county, at the next regular term thereof after receiving said petition, to make an order on his order book directing an election to be held in the said county, city, town, district or precinct * * * which order shall direct the sheriff, or other officer of the said county, who may be appointed to hold said election, to open a poll at each and all of the voting places in said county, city, town, district or precinct on said date, for the purpose of taking the sense of the legal voters of said county, city, town, district or precinct who are qualified to vote at elections for county officers, upon the proposition whether or not spirituous, vinous or malt liquors shall be sold, bartered or loaned therein."

It will thus be seen that so far as the question here presented is concerned there is no difference whatever between Section 2554 as enacted in 1894 and Section 2554 as amended in 1914, and really the matter might be treated as if the act of 1894 had not been amended.

Let us now see how Section 2560, which contains the county unit law of 1906, was amended by the act of 1912, now inserted in the statutes as Section 2560 in place of the old section. The act of 1906 and the act of 1912 are exactly alike, except in one particular: The act of 1906 excepted from the operation of the county as the controlling unit cities of the first, second, third and fourth classes, and provided that they might hold an election on the same day on which an election for the entire county was held. This exception was expressed in the act of 1906 in the following words: "Except that cities of the first, second, third and fourth classes may hold an election on the same day on which an election for the entire county is held." The amendatory act of 1912 struck from the act of 1906 these quoted words, leaving the remainder of the section as it was enacted

in 1906. The act of 1912, therefore, did not make any change whatever in the act of 1906 in so far as that act recognized the power of the county as the controlling unit and denied to cities, towns, districts and precincts within the county the right to regulate the matter for themselves. In other words, in both the acts of 1906 and 1912 the county was recognized as the controlling unit, and in both of these acts the right of the smaller units to act for themselves was taken away when the county as a whole had spoken. This being the situation, it seems clear, treating as we do the county unit legislation as valid, that the act of 1914 did not repeal the county unit law of 1912.

If Section 2554 as it existed until 1914, and the county unit law of 1906 as it existed until its amendment in 1912, should be construed together, as they were in the New Castle and other cases, there is no reason that we can think of why Section 2554 as amended by the act of 1914 and the act of 1906 as amended by the act of 1912 should not likewise be read together and sustained, because, as we have pointed out, the amendments made to Section 2554 and to the act of 1906 do not in any manner affect the construction of these sections in so far as they relate to the question we are now considering. Section 2554, as first enacted, and as it now stands, merely provides for the calling and holding of the election for the purpose of ascertaining the will of the people in the territory to be affected by the election. It does not now and never did attempt in any manner to define the effect of an election in the larger unit upon the rights of the smaller unit. The controlling power that the larger unit, for example, the county, should have over the small unit, as, for example, the precinct, was not declared until the enactment of the county unit law in 1906. The only purpose of the county unit law of 1906, and the act of 1914 amending it, was to make the county, if it chose to vote as an entirety, the dominating unit. It was not intended by this legislation to affect in any other manner Section 2554.

After the enactment of the county unit law of 1906 elections could be and were called and held under and in the manner provided in Section 2554, and they may yet be so called and held, as the amendment of the county unit law in 1912 and the amendment of Section 2554 in 1914 did not in any manner change the relative func-

tions of Section 2554 and Section 2560. Each of these sections had its place in the scheme of regulation, and neither of them repealed the other. The county unit law of 1912 merely took the place of the county unit law of 1906, and the act of 1914 merely took the place of the act of 1894.

It is said, however, that as the act of 1914, now Section 2557 of the Kentucky Statutes, expressly provides that "all laws and parts of laws in conflict herewith are hereby repealed," it necessarily repeals Section 2560, the county unit law of 1912, which it is argued is in conflict with Section 2554 (the act of 1914). But with this argument we are unable to agree. The title of the act of 1914 is "An Act to amend Chapter 81, Article 1, entitled, 'Liquors, Intoxicating,' of Kentucky Statutes, Carroll's Edition, 1909, by repealing Section 2554 and 2557 and enacting other provisions in lieu thereof." The act then proceeds, in Section 1, to repeal Section 2554 and enact a new section in its place, and proceeds in Section 2 to repeal Section 2557, and enact a new section in its place. It will thus be seen that the title of the act, as well as the body of it, plainly show that it was only intended to affect and repeal Sections 2554 and 2557.

It is, we think, equally clear that the scope of the act so plainly defined could not be and was not intended to be extended by Section 3 thereof, declaring that "All laws and parts of laws in conflict herewith are hereby repealed." This repealing clause should be read and construed to harmonize with the title and the body of the act and confined to the purpose of the act as expressed in the title and the body. Really, in view of the title of the act and the subject matter of the sections, there was no necessity for an additional repealing clause. And certainly this repealing clause should not be construed to extend the scope of the act beyond the purpose expressed in its title and body.

This view was aptly expressed by this court in Hall v. Smith-McKenney Co., 162 Ky., 159, where it was said: "The act of 1914 amends only Sections 2554 and 2557 of the local option law of 1894." Accordingly, our conclusion is that the act of 1914, as well as the act of 1912, or, in other words, Sections 2554 and 2560, of the Kentucky Statutes, are each valid, consistent enactments, and under and by virtue of them an election prohibiting

the sale of liquor in any county in the State may be held, and if a majority of the voters of the county at such an election vote against the sale of liquor, then its sale in each city, town, district and precinct in the entire county is prohibited.

In the Shelby County case two questions are made affecting alone the election in that county. The first is that the county judge did not sign the order calling the election until after the election had been held and the contest instituted; and, second, that the sheriff did not advertise as required by law the election.

As a sufficient answer to the objection that the order was not signed when it should have been, it seems necessary only to refer to the case of May v. Duncan, 157 Ky., 586, in which the court held, in a contested liquor election case, that the fact that the county judge did not sign the orders calling the election until after it had been held, did not affect its validity. In that case the order book was not signed until three days after the election had been held, while in this case it was not signed until after the grounds of contest had been filed. But we do not think the fact that the order book was not signed until the contest was commenced is material. It was signed before the contest was disposed of, and, as held in the May case, the signing related back to the date of the order.

In reference to the other question, the statute, in Section 2555, provides that "it shall be the duty of said sheriff or other officer to have said order published in some weekly or daily paper published in the county for at least two weeks before the election, and also to advertise the same by printed or written handbills posted at some conspicuous place in each precinct in the county, for the same length of time." The record shows that this provision of the statute was complied with. This is all that need be said on this point.

In the Bourbon County case the appeal was filed in the clerk's office of the circuit court on January 9, 1915, and summons was issued returnable to the next regular term commencing on March 8, 1915. On January 30, 1915, a special term of the Bourbon Circuit Court was called, to be held on Thursday and Friday, February 11th and 12th, for the purpose of hearing and disposing of the appeal. When the court convened in session on

the days named, the attorneys for the appellants here objected to the hearing of the case because it did not stand regularly for trial until the March term of the court. This objection was overruled and the case was heard and disposed of at the special term. It is now urged that the court had no jurisdiction to hear or determine the case at the special term, or before the regular term.

Section 2567 of the Statutes provides, in substance, that appeals from the decisions of the contest board to the circuit court may be taken "in the same way as appeals are taken from the quarterly court to the circuit court." Section 726 of the Code, regulating appeals from the quarterly court to the circuit court, provides that "appeals shall be docketed and stand for trial as ordinary actions." And Section 363 of the Code provides that "ordinary actions shall stand for trial at the first term after process shall be served on the defendant, as specified in Section 102." Section 964 of the statutes provides that "whenever it is necessary to transact the business, a special term may be held in any county, either by an order entered of record at the last preceding regular term in the county or by notice signed by the judge and posted at the courthouse door of the county for ten days before the special term is held. The order or notice shall specify the day when the special term is to commence, and shall give the style of each case to be tried, or in which any motion, order or judgment may be made or entered at the special term."

Appeals are to be considered as pending in the circuit court from the time the record is filed until the case is disposed of. The appeals in these cases were filed in the circuit court on January 8, 1915. They were, therefore, pending in the court when the order for the special term was called on January 30th, and of course when the special term was held and the cases heard and disposed of on February 11. We do not find in the statute any provision making a difference between appeals pending in the court and other cases pending in the court, and we think the court has the same power to call a special term to hear and dispose of an appeal pending in the court as it has to call a special term to hear and determine a case originally brought in that court.

Having considered all of the grounds for reversal relied on by counsel for appellants in their oral arguments and briefs filed in this court, our conclusion is that the judgments should be affirmed in each case, and it is so ordered; the whole court sitting.