Billy Joe HOWARD, William Culbertson, Lucy J. Culbertson, Betty Jo Lykins, Buena Ely, and Faye Montgomery, Movants,

v.

Thomas R. "Skip" SALYER, et al., Respondents.

Supreme Court of Kentucky.

July 3, 1985.

Rehearing Denied Sept. 26, 1985.

Bert T. Combs, Charles R. Simons, Wyatt, Tarrant & Combs, Louisville, Law-rence E. Forgy, Jr., Wyatt, Tarrant & Combs, Lexington, Roger D. Riggs, George W. Moore, Maxey, Riggs, Moore & Cowden, P.S.C., Mt. Sterling, for movants.

C.K. Belhausen, David LeMaster, Paintsville, for respondents.

STEPHENSON, Justice.

This appeal involves interpretation of various sections of KRS Chapter 242, the local-option statutes. The trial court held that an election in a magisterial district in Magoffin County comported with applicable statutes. The Court of Appeals affirmed. We granted discretionary review and reverse.

The facts leading up to this lawsuit are as follows: In July of 1981, a petition was filed with the Magoffin County clerk requesting that an election be held in the third magisterial district of Magoffin County to determine whether alcoholic beverages could be sold in the district. The county judge executive ordered that the election be held in the third district. In 1936 Magoffin County voted to adopt prohibition. This prohibition was still in effect when the election in controversy was held. In September 1981, an election was held in the third magisterial district, and a majority of the votes cast were in favor of the sale of alcoholic beverages. Movants then filed suit challenging the validity of the election on the ground that the magisterial district was not eligible to hold an election regarding the sale of alcoholic beverages. The trial court rejected the movants' position, expressing the opinion that KRS 242.020 and the definition of "territory," KRS 242.-010(5), controlled. The Court of Appeals affirmed, agreeing with the trial court that to hold that KRS 242.125 precludes such election in all territories would conflict with KRS 242.020 and Kentucky Constitution Sec. 61. The Court of Appeals further expressed the opinion that KRS 242.125 could be read as comporting with Sec. 61 since the statute does not specifically prohibit elections in territories other than cities of the first four classes. Further, the Court of Appeals stated that the county

unit rule was repealed in 1948 by KRS 242.125, and legislative intent was made plain by the enactment of KRS 242.020 (Acts 1978, etc.). Further, the opinion states that KRS 242.125, limiting separate voting to cities of the first four classes, constitutes special legislation.

It is in this posture that we granted discretionary review. We are of the opinion the Court of Appeals decision is erroneous. In order to unravel this situation, we must go to Sec. 61 of the Kentucky Constitution, which provides:

The General Assembly shall, by general law, provide a means whereby the sense of the people of any county, city, town, district, or precinct may be taken, as to whether or not spirituous, vinous or malt liquors shall be sold, bartered or loaned therein, or the sale thereof regulated. But nothing herein shall be construed to interfere with or to repeal any law in force relating to the sale or gift of such liquors. All elections on this question may be held on a day other than the regular election days.

Before we reach the question presented in this appeal, the historical background should be explored. The central issue in this case is whether the "Cammack Act" has been repealed, as stated in the Court of Appeals opinion. The Cammack Act, 1906, Kentucky Statutes, Chapter 21, Section 1 a, in part being an act to amend Section 2560 of the Kentucky Statutes, it being a portion of Article 1 of Chapter 81, states in pertinent part as follows:

... When an election is held in an entire county and a majority of the legal votes cast at said election are against the sale, barter or loan of spirituous, vinous, malt or other intoxicating liquors, then it shall not be lawful to sell, barter or loan any such liquors in any portion of the county. If at such an election for the entire county the majority of the legal votes cast are in favor of the sale, barter or loan of any such liquors, such election shall not operate to make it legal to grant license to sell, barter or loan such liquors in any territorial division of such

county from which the sale, barter or loan has been excluded by an election held under this article, or by special act, but the status of such territorial division shall remain as if no such election had been held.

The first case to speak on the constitutionality of the Cammack Act is *Board of Trustees of Town of New Castle v. Scott*, 125 Ky. 545, 101 S.W. 944 (1907). In this case, New Castle, a city of the sixth class, held a local option election and challenged the validity of the statute. The statute is the Cammack County Unit Act, exempting only cities of the first four classes. In holding the Cammack Act constitutional, this court placed this definitive construction on Sec. 61:

... The Convention was not prepared to say that prohibition throughout the state should be attempted, but recognized that the people of the communities immediately affected by the traffic should for themselves say whether they would have prohibition. At the time the Constitution was adopted, prohibition prevailed in a number of the counties and towns of the state by virtue of special laws previously enacted by the Legislature. Section 61 of the Constitution, which required the Legislature to provide by general law for local option elections, was careful to say that the previous special statutes for certain localities were not repealed by that section. All those special statutes provided prohibition in the localities specified. The purpose of the Convention is shown by this action to have been not inimical to local prohibition, but rather in its favor. Our construction is, in view of these conditions and the language used, that the *Constitution meant that the local units named should control within their own territory the question of prohibition; that each should have the privilege of saying conclusively that prohibition should prevail, but not conclusively that it should not. This construction harmonizes the section so as to allow all of it to stand, and to give equal force and power to each unit named.*

*If a precinct votes that prohibition shall prevail within its territory, it is not competent for any other unit to gainsay the matter.* If, however, the precinct votes against prohibition, that leaves the question, so far as it is concerned, as it was before any vote was ever taken on it. But, if the town or city which includes the precinct in question subsequently votes in favor of prohibition, the whole town or city thereby becomes dry. Or, if the county subsequently votes dry, the same result as to the county is attained. But if the county or town votes wet, and the precinct has previously voted dry, the precinct controls for itself. *Thus each unit for itself has the option of putting the prohibition law into effect within its territory, and no larger or smaller unit can prevent it.* This is the only construction of the section that occurs to us, or that has been pointed out, that will allow equal and uncontrolled power to every one of the five units named in the section. (Emphasis added.)

And, further comment on the Cammack Act:

... The Legislature has now for the first time enacted a law in which it does give a controlling vote to a locality—to each of the units named—in the event it votes for prohibition, over other units mentioned, which may not have voted, or may have voted previously against prohibition. The question is now raised and presented for decision for the first time whether, under section 61 of the Constitution, it has the power to make such discrimination. We answer that it has. It has it because it is not denied to it by the Constitution; but, on the contrary, as there must otherwise be a conflict between some of the units under certain conditions, it is by implication vested in the Legislature to declare in such event which shall prevail. It has it because it inheres in the nature of the subject, and by virtue of the overpowering quality of the police power of the state which is vested in the lawmaking body of the government. And it has it, as we think

we have pointed out, in the evident purpose of the Convention to further, and not to hinder, the restrictions that the people might see proper to place upon an article so destructive to the morals, health, and safety of the public.

At this point, we may say that the act under examination was intended to change the law as to the effect of a vote on prohibition. *Under the statute that was repealed by this act, a vote against prohibition was given the same effect as a vote in favor of it; but the present act intended to give a different effect, by allowing each unit a chance—without regard to any previous vote taken in any other unit—to adopt prohibition.* (Emphasis added.)

*Board of Trustees* further held that treating the first four classes of cities did not violate Section 59 or 60 of the Kentucky Constitution.

No opinion was expressed as to whether any precinct or town may not have another vote to change from prohibition.

*May v. Ferguson*, 135 Ky. 411, 122 S.W. 208 (1909), went one step further and filled in this lack of expression:

... Under the Cammack Act, which became a law March 14, 1906 (Acts 1906, p. 86, c. 21), the county is the absolute unit in all counties save those in which there is situated a city of the first, second, third, or fourth class, and in such counties all of the territory outside of such city limits is an absolute unit, and the city is made a separate unit. This was a complete reversal of the order of things that had theretofore existed, for under the law in force prior to the adoption of this act the precincts and incorporated towns of whatever class were recognized as separate units, and might take a separate vote upon the question as to whether or not local option should be enforced within a given boundary or territory. The old law was not satisfactory to the temperance or local option adherents, and, in order that the citizens in one part of a county might have a voice in

determining whether or not prohibition should be enforced in another part of the county, the law was amended as above indicated so as to make the county the unit, and the only exception which the act recognizes is that cities of the first, second, third, and fourth class are made separate units, but in order for them to avail themselves of the right to be recognized as separate units, it is necessary that they should vote upon the same day upon which the vote is taken in the entire county when the question is submitted as to whether or not prohibition shall prevail in the county....

and further:

*The whole object of temperance legislation has been to bring about prohibition and create dry territory, and courts in dealing with this class of legislation have borne in mind this primary object of the Legislature, and have construed such acts as far as possible so as to carry out this legislative intent.* Hence it has been held that where territory is wet where prohibition has not theretofore been enforced, any subdivision of a county may vote upon the question of establishing prohibition therein, but no subdivision of a county other than cities of the first, second, third, or fourth class may take a vote upon the question at all when prohibition is already enforced within such territorial limit. In other words, *where no prohibitory laws are in force in the county, any magisterial district, voting precinct, or town of any class may vote to establish prohibition within the limits of such magisterial district, voting precinct, or town; but, where prohibition has been established in the entire county, a different rule obtains. A unit has been established, and the vote can never again be taken in any subdivision of that county other than in some one of the cities belonging to the excepted class, unless it is taken in the entire county. So that, where a precinct or magisterial district has once been made dry by a vote of the county, it must forever remain dry, unless the bond is lifted by the people of the entire county* .... (Emphasis added.)

An amendment to the local option statutes in 1912, bringing the formerly exempted cities into the act, was held not to violate Section 61 in *Young v. Trimble*, 164 Ky. 177, 175 S.W. 366 (1915), citing *Board of Trustees*.

After the hiatus of national prohibition, the legislature reenacted the Cammack Act, Section 2554c–17, Carroll's Statutes, in 1936. The language of this section is essentially that of the 1906 Cammack Act. This section was carried forward in 1942 as KRS 242.210 in the same language. The 1936 act did not exempt cities from the county unit rule.

In 1948, the local option act was amended, KRS 242.125, to exempt cities of the first four classes from the *county unit* rule and provided that in a county which had voted in favor of prohibition an election could be held in any city of the first four classes as to the discontinuance of prohibition in such city. There was a further provision that in the event of a vote against prohibition for the city, this shall not prevent an election from thereafter being held in any precinct of such city to decide whether such precinct should have prohibition.

KRS 242.125(2) concludes as follows:

If the majority of votes cast in the county outside of such cities of the first four classes are for prohibition, KRS 242.220 to 242.430 shall apply to all of the county outside of such cities. If the majority of the votes cast in the county outside of such cities are against prohibition, the votes shall not make KRS 242.220 to 242.430 inapplicable to any district or precinct [outside] of such cities that was dry territory at the time of the election.

We are of the opinion this language, taken together with the other language in the statute, is substantially the same as the Cammack Act, and therefore conclude that KRS 242.125 did not repeal the Cammack Act.

Since the Act of 1936, this court has, without exception, held that the Cammack Act is in full force and effect. See *Murphy v. Menefee*, 288 Ky. 119, 155 S.W.2d 753 (1941).

After the 1948 Act, KRS 242.125, a magisterial district in Floyd County sought to have an election to escape a county-wide prohibition. We held in *Stephens v. Stumbo*, Ky., 239 S.W.2d 995 (1951), that KRS 242.125 made it unmistakably plain that the legislature intended to change the effect of the county unit rule as to cities of the first four classes, but only in that respect. See also *Stice v. Milliken*, Ky., 343 S.W.2d 824 (1961).

The Court of Appeals gave much emphasis to KRS 242.020 as demonstrating an intent on the part of the legislature to change the county unit rule. At oral argument, respondents placed reliance upon this statute, as well as KRS 242.010(5).

KRS 242.020 provides that qualified voters of the territory to be affected may petition for an election with certain conditions, etc. KRS 242.010(5) defines territory to mean county, city, district, or precinct.

We are of the opinion the reasoning of the Court of Appeals and the arguments advanced by respondents on this point are without merit.

The language in KRS 242.020 was first enacted by the legislature in 1894 as Section 2554 and reenacted in 1936. In these two enactments, county, city, district, or precinct was used instead of "territory." Afterwards, "county, city, district, or precinct" was separated and put into the definition section in 1948 as KRS 242.010(5). The 1978 amendment to this section merely changed county court to county judge executive.

■ It is apparent to us that in all its manifestations KRS 242.020 is a procedural section and merely provides a vehicle to set in motion procedures to call an election where authorized by the substantive portion of KRS Chapter 242, that is, KRS 242.125.

This was first stated in *Young*, speaking on Section 2554 as follows:

... merely provides for the calling and holding of the election for the purpose of ascertaining the will of the people in the territory to be affected by the election. It does not now and never did attempt in any manner to define the effect of an election in the larger unit upon the rights of the smaller unit. The controlling power that the larger unit, for example, the county, should have over the small unit, as, for example, the precinct, was not declared until the enactment of the county unit law in 1906.

We are of the opinion the legislature has retained the essential element of the county unit rule in KRS 242.125 and that KRS 242.020 does not in any respect operate to modify this rule and is clearly a procedural section of the chapter. We are of the opinion KRS 242.125 does not violate Sections 59 and 60 of the Kentucky Constitution.

■ In the natural state of things, alcoholic beverages may be sold any time, any place, to anybody. The thrust of legislation in this area is to give a means to the voters to impose prohibition. This is the essential purpose of Section 61 of the Constitution and the acts of the legislature pursuant to the constitutional mandate. All of the cases decided by this court since *Board of Trustees* in 1907 to the present date have followed the philosophy set out there and in *May*. The legislature has not changed the order of things in this area, and, accordingly, we find the Court of Appeals in error. The county judge executive had no authority to call an election in the third magisterial district in Magoffin County.

The decision of the Court of Appeals is reversed, and the judgment of the trial court is reversed with directions to enter a judgment in conformity with this opinion.

AKER, GANT, STEPHENSON, VANCE and WINTERSHEIMER, JJ., concur.

LEIBSON, J., dissents and files a separate dissenting opinion in which STEPHENS, C.J., joins.

LEIBSON, Justice.

Respectfully, I dissent.

The language of the constitutional provision ordering the General Assembly to provide for wet/dry elections is *neutral.* The same language mandates the General Assembly to provide for both wet and dry elections. Section 61 of the Kentucky Constitution provides:

> "The General Assembly shall, by general law, provide a means whereby the sense of the people of any county, city, town, district or *precinct* may be taken, as to *whether or not* spirituous, vinous or malt liquors shall be sold, bartered or loaned therein, or the sale thereof regulated." (Emphasis added.)

The reports of the debates before the constitutional convention show that the purpose of Section 61 was to provide for local option, wet or dry, to be allowed in any district or precinct. But fifteen years later the pendulum of public opinion had swung sharply in favor of prohibition. It was in this atmosphere that the General Assembly enacted the Cammack Act in 1906, which was not neutral. It was in this atmosphere that Chief Justice O'Rear wrote the majority opinion in *Board of Trustees of Town of New Castle v. Scott,* 125 Ky. 545, 101 S.W. 944 (1907), which also is not neutral. Chief Justice O'Rear's opinion in the *New Castle* case attributes to the constitutional fathers a bias favoring more restrictions against voting "wet" than voting "dry." This is a bias that contrasts with the plain meaning of the words of the constitutional provision, and which represents his own viewpoint and, historically, the passion of his time more than the time of the Constitutional Convention of 1890. He says *"we must assume"* that the constitutional fathers viewed the liquor traffic as "one of the most serious evils of the age, if not the most sinister menace to society that was known." 101 S.W. at 948. (Emphasis added.) He states:

> "Enlightened public opinion everywhere has constantly grown in favor of greater restrictions upon it." *Id.*

On the contrary, *we must assume* that what was in the mind of the convention is what was in the words of the Constitution.

History moves on—not necessarily upward, but on. The passion to legislate against the use or sale of alcohol crested in the Eighteenth Amendment to the United States Constitution, the Prohibition Amendment, in 1919, and receded in the repeal of prohibition in the Twenty-First Amendment to the United States Constitution in 1933.

By 1934, in an act regulating liquor licenses, the General Assembly had come to view the problem in a new light:

> "(C)onditions have changed over the entire face of the world from the aforesaid years 1918 and 1919 to the present year 1934, including wars, depressions and many crimes, and particularly have conditions changed in regard to alcoholic liquors." Kentucky Acts Ch. 146 § 3 (1934).

Now the "evils of the age" (*New Castle, supra*) are viewed not as sale and use of alcohol, but bootlegging and the by products of prohibition:

> "The General Assembly finds that distressing and dangerous conditions prevail in the Commonwealth of Kentucky which, among many others, include: Bootlegging, moonshining; sale of poisonous alcoholic liquors; restriction on the fair manufacture and sale of alcoholic liquors to the detriment of the Commonwealth; exorbitant prices for any good alcoholic liquors...." Kentucky Acts Ch. 146 § 4 (1934).

The Cammack Act of 1906 underlying this court's decision in the *New Castle* case was repealed in 1948. The majority expresses the opinion that the Cammack Act has been carried over by subsequent legislation. But it is not the legislation regulating wet/dry elections which creates distinctions favoring "dry" over "wet." It is the meaning we attribute to these statutes by judicial interpretation. Indeed, if the legis-

lation did so, such legislation would be unconstitutional.

We should not adhere blindly to precedent, simply because it is precedent. To do so is sanctification of ancient fallacy. In 1896, in *Plessy v. Ferguson*, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256 (1896), the United States Supreme Court interpreted the Civil War Amendments, U.S. Constitution, Amendments 13, 14 and 15, restrictively, holding that for one important segment of our society separate public facilities would be considered equal. In 1954, in *Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), the United States Supreme Court corrected this erroneous interpretation of the constitution, holding that when the constitution mandates equal treatment the Supreme Court is duty bound to see that the government provides it regardless of public opinion. Certainly I do not equate the use or sale of alcohol with the mistreatment of minorities. But the underlying constitutional principle is the same. Where the constitution is neutral, the General Assembly and this court also must be neutral. This principle of constitutional interpretation was sufficiently evident to both the trial court and the Court of Appeals in the present case that neither deferred to the opinion in the *New Castle* case, as we have done. Both the trial court and the Court of Appeals interpreted the Kentucky wet/dry election statutes as neutral and thus avoided conflict with Section 61 of the Kentucky Constitution.

The Kentucky statutes are confusing at best. Perhaps they are intentionally so in order to permit this court to continue to perpetuate different rules for wet and dry elections at the expense of the constitution as it has done historically. The Cammack Act was repealed in 1948. Whether or not it was reenacted in other legislation is anybody's guess in the maze of obscure statutory language. But it is judicial opinions, not statutes, that create and then perpetuate the so-called "county unit" rule favoring "dry" votes over "wet" votes, attributing to the statutes in KRS Chapter 242 a bias which they do not otherwise have.

I favor neither "wet" nor "dry" voting. But I consider it our responsibility to uphold the words of the constitution, which provides for local option in the precinct. We should not perpetuate erroneous supplementation of the constitution in previous judicial decisions.

STEPHENS, C.J., concurs in this dissent.