## Edwards, Judge, et al. v. Porter.

### (Decided Dec. 16, 1910.)

### Appeal from Logan Circuit Court.

1. Local Option—Election in Entire County—City of Fourth Class— May Demand Separate Vote.—Russellville is a city of the fourth class. On December 6, 1906, an election was held in Logan County upon the question of whether spirituous, vinous or malt liquors should be sold therein. The city of Russellville in said county did not as provided by section 2560, Ky. Stats. hold a separate election on that day on the question, and the majority of the votes were cast against the sale of such liquors.

2. Same.—Petition for Election in Russellville—County as Unit Must Act.—When City May Have Separate Vote.—On December 9, 1909, appellee and others, qualified voters, of Russellville, petitioned the county court asking that an election be held to take the sense of the voters of the city upon the question of the sale of such liquors. The county court refused to order the election on the ground that it was not authorized by statute. Upon appeal to the circuit court, a mandamus was awarded to order the election. Upon this appeal from that judgment, Held: That three years having elapsed another vote may be taken in Logan county, and if a vote is taken for the county, Russellville may demand a separate vote, but as the county is the unit, that unit must act, and Russellville is only entitled to hold an election on the same day on which an election for the entire county is held.

S. R. CREWDSON, JOHN S. RHEA, and BROWDER & BROWDER for appellants.

R. W. DAVIS, TRIMBLE & BELL and SELDEN Y. TRIMBLE for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

Russellville is a city of the fourth class. It is the only city of that class in Logan county. On December 8, 1906, an election was held in Logan county under section 2554, Kentucky Statutes, upon the question whether or not spirituous, vinous or malt liquors should be sold therein. The city of Russellville did not as provided by section 2560 hold an election on the same day on the question. The majority voted against the sale, and under the statute the local option law was thereby put in force throughout the whole county including the city of Russellville. (O'Neal v. Minary, 125 Ky., 571; Yates v. Nunnelly, 125 Ky., 664; May v. Ferguson, 135 Ky., 411.) On December 9, 1909, V. K. Porter and others, citizens and qualified voters of Russellville presented their petition to the Logan county court, asking that an election be held on Feburary 17, 1910, to take the sense of the legal voters of the city upon the proposition whether or not spirituous, vinous or malt liquors should be sold therein. The county court refused to order the election on the ground that it was unauthorized by the statute. Thereupon the applicants brought this suit in the circuit court against the county judge asking a mandamus requiring him to order the election. Upon the hearing of the case the circuit court awarded the mandamus as prayed and from this judgment the appeal before us is prosecuted.

By section 2554, Kentucky Statutes, an election may be held in a county, city, town, district or precinct for the purpose of taking the sense of the legal voters upon the proposition whether or not spirituous, vinous or malt liquors shall be sold therein. By section 2563 it is provided that the election or elections provided for shall not be held in any county, city, town, district or precinct oftener than once in every three years. Similar provisions are found in the local option statutes which have been adopted in many of the States, and the rule is that when the law had been put into effect by the vote of the people of a certain territory it can only be put out of force by the vote of the same territorial division which put it into effect. In 19 Am. & Eng. Encyc. of Law, 511, the rule is thus stated:

"When a statute provides that after the lapse of a specified time the question of revoking an order declaring prohibition to be in force by virtue of a prior adoption may be submitted, the resubmission must be to the voters of the entire territory embraced in the former election."

To same effect see 23 Cyc. 105, 1 Woolen & Thornton on Intoxicating Liquors, section 549. This court adopted the rule in Commonwealth v. King, 86 Ky., 436, and that opinion was approved in Lafferty v. Huffman, 99 Ky., 94.

Under the above authorities, when Logan county as a unit put the local option law in force it remains in force until Logan county again votes on the question unless there is something in the act putting a city of the fourth class on a different plane from other towns or districts in the county. The only provisions of the statute which have any application are sections 2560 and 2561, which as far as material are as follows:

"No election in any town, city, district or precinct of a county shall be held under this article, on the same day on which an election for the entire county is held, except that cities of the first, second, third and fourth classes may hold an election on the same day on which an election for the entire county is held. When an election is held in an entire county, and a majority of the legal votes cast at said election are against the sale, barter or loan of spirituous, vinous, malt or other intoxicating liquors, then it shall not be lawful to sell, barter or loan any such liquors in any portion of the county." (Section 2560, Kentucky Statutes.)

"If, at any election provided for in this act, a majority of the legal votes cast are against the sale. barter or loan of said spirituous, vinous or malt liquors, the sale barter or loan of any such liquors shall be unlawful in such county, city, town, district or precinct, as the case may be, except as hereinbefore provided, unless at a subsequent election held under this act a majority of the legal votes cast shall be in favor of the sale of said liquors." (Section 2561, Kentucky Statutes.)

It will be observed that by the act no election in any town, city, district or precinct of a county shall be held on the same day on which an election for the entire county is held, except that cities of the first, second, third and fourth classes may hold an election on the same day on which an election for the entire county is held. It will thus be seen that the cities of the first, second, third and fourth classes stand just as any other part of the county except that they may hold an election on the question on the same day on which an election for the entire county is held. In O'Neal v. Minary, 125 Ky., 571, Versailles, which is a city of the fourth class had failed to ask a separate vote on the day when the county election was held, and it was insisted that the city was not bound by the result in the county because as a matter of fact the majority of those who voted in the city voted against putting the law in force. Construing the statute, we said:

"The county court had only ordered an election to be held in the county of Woodford, and only a notice for the election for the county had been given. There was no order for an election in the city of Versailles, and no notice that such an election would be held: In canvassing the vote, therefore, the canvassing officers properly canvassed the vote of the county, and certified it accordingly; for there was nothing to authorize them to make a separate canvass or a separate return as to the city of Versailles. The appellants were not entitled to an injunction restraining the county clerk from spreading upon his record book the certificate given by the canvassing officers, as that certificate was legal and was the only certificate which the canvassing officers were authorized to make. The canvassing officers are not a party to these proceedings; but, if they were, the result would be the same. They could not be required to certify the result in an election which had not been ordered to be held, and of which no notice had been given. The

difficulty in the case probably arises from the fact that, when the act of 1906 was passed, there were some newspaper publications to the effect that the act made cities of the first, second, third and fourth classes a unit, and the remainder of the counties in which such cities were situated outside of the city another unit, for local option purposes. But this is not the language of the act. The act makes the county the unit. It does not except the cities of the first, second, third and fourth classes out of its operation. It only allows them to vote on the same day that the county votes. If the act had excepted cities of the first, second, third and fourth classes out of its operation, then the position taken for appellants could be maintained; but the act was evidently drawn intentionally to avoid this very thing. The county is made the unit, and the city within the county is bound by the action of the county, unless an election is held for it on the same day with the county; and, in that event, as some force must be given to every part of the act, and the privilege given the city is not an empty form, it must mean that when the election is held for the city on the same day on which an election for the entire county is held, its vote is to be counted separately, and is to have effect, although the city may vote one way and the county another. In the case at bar, as no election was held for the city on the day when the county election was held, the vote of the county must control. The precincts within the city of Versailles, when an election is held for the entire county, and not for the city, stand just as any other precincts in the county. The purpose of the election is to ascertain the will of the county as a whole, not the will of a particular precinct. If the county should vote in favor of the sale, the precincts which vote against the sale would not have the right to have their vote so recorded, and the law declared thereafter in force in those precincts. Unless an election is held for the city on the same day as the county election is held, the vote of the county as a whole must control.''

The question again came before us in May v. Ferguson, 135 Ky., 414, where we again said:

''The old law was not satisfactory to the temperance or local option adherents, and, in order that the citizens in one part of a county might have a voice in determining whether or not prohibition should be enforced in another part of the county, the law was amended as above indicated so as to make the county the

unit, and the only exception which the act recognizes is that cities of the first, second, third and fourth classes are made separate units, but in order for them to avail themselves of the right to be recognized as separate units, it is necessary that they should vote upon the same day upon which the vote is taken in the entire county when the question is submitted as to whether or not prohibition shall prevail in the county. So that, where a vote is ordered upon this question for the entire county in which there is situated a city of the first, second, third or fourth class, unless a separate vote is asked for and had within the territorial limits of such city, it is bound by the result of the election in the entire county, and it is only where its citizens seek and are granted a separate vote on the same day that its right to be treated as a separate unit is recognized.''

In May v. Ferguson a local option election had been held for the entire county, and on the same day an election had been held for the city, the county going dry and the city wet. No other election had been held in the county, and the city had by its vote exercised its right to determine its status for itself. But that is not this case. Russellville did not exercise its right when the county election was held, and the entire county became a unit. A city of the first, second, third or fourth class is not made an absolute unit by the act, but is given the right to become a separate unit by having a separate election for itself on the day the county election is held. Unless it exercises this right it does not become a unit, and by the terms of the act if the majority of the legal votes cast in the county are against the sale, ''then it shall not be lawful to sell, barter or loan any such liquor in any portion of the county.'' If when an election is held under the act for the entire county, such city exercises its right to a separate vote, and the city goes wet and the county dry or both go dry, the city becomes a unit, and may at the end of three years take another vote without regard to what the county may do or may not do. But where the city has not thus become a unit, and the law has been put in force in the entire county, it can be voted out only by the vote of the county; and whenever an election for the entire county is held the city may have a separate vote for itself.

We, therefore, conclude that three years having elapsed another vote may be taken in Logan county, and if a vote is taken for the county, Russellville may de-

mand a separate vote, and thus determine the matter of license or no license for itself. But as the county is now the unit, that unit must act, and Russellville is only entitled to "hold an election on the same day on which an election for the entire county is held."

It follows that the county court ruled properly in refusing to order an election in the city alone.

Judgment reversed and cause remanded for a judgment, and further proceedings consistent herewith.

Whole court sitting.

Judge Nunn dissenting.

Dissenting opinion by Judge Nunn:

The county of Logan voted local option at an election held under chapter 81 of the Kentucky Statutes, after what is known as the "Cammack Amendment" became a law. After local option had been in force for over three years, appellees sought to have another vote taken on the question confined to the city of Russellville, a city of the fourth class. Appellants resisted the right to a vote in the city alone, and contended that the whole county should vote or an election could not be had. Appellants lost in the lower court and have appealed.

In order that a thorough understanding of the question involved might be had, we will quote all the statutes on the subject as they existed at the time the Cammack Act, or amendment, took effect. Section 1596 is as follows:

"All elections to take the sense of the people of any town, city, county, district or precinct as to whether or not spirituous, vinous or malt liquors shall be sold, bartered or loaned therein, or the sale thereof regulated, shall be held as hereinbefore provided for the election of county, town, city, district or precinct officers, except that a vote on such questions shall be held on a day other than the regular election day. All laws, general or special, now in force, inconsistent with this act, or any part of its provisions, are hereby repealed."

This section appears under the head of "Local Option," chapter 41, Kentucky Statutes.

Section 2554 is as follows:

"Upon application, by written petition, signed by a number of legal voters in each precinct of the territory to be affected, equal to twenty-five per cent. of the votes cast in each of said precincts at the last preceding general election, and when for town or city elections, the

number of votes cast at the last city or town election, it shall be the duty of the judge of the county court in such county, at the next regular term thereof after receiving said petition, to make an order on his order book directing an election to be held in said county, city, town, district or precinct, as the case may be, on some day named in said petition, not earlier than sixty days after said application is lodged with the judge of said court, which order shall direct the sheriff, or other officer of said county, who may be appointed to hold said election, to open a poll at each and all the voting places in said county, city, town, district or precinct on said date, for the purpose of taking the sense of the legal voters of said county, city, town, district or precinct who are qualified to vote at elections for county officers, upon the proposition whether or not spirituous, vinous or malt liquors shall be sold, bartered or loaned therein, or whether or not any prohibition law in force in any county, city, town, district or precinct, by virtue of any general or special act or acts, shall become inoperative; and counties, cities, towns, districts or precincts in which the sale, barter or loan of spirituous, vinous or malt liquors are now prohibited may have a vote thereon under the provisions of this act.''

Section 2563 is as follows:

''The election or elections herein provided for shall not be held for any (county), city, town, district or precinct oftener than once in every three years.''

The last two sections quoted are under the head of ''Local Option,'' chapter 81, Kentucky Statutes.

Thus the matter stands upon the question involved, unless the Cammack Act has changed it. That it may be seen to what extent, if any, that act has changed the law, we will copy section 2560, Kentucky Statutes, as it existed before the passage of that act. It was as follows:

''If, at an election held for an entire county, it shall be found that a majority of the legal votes cast at said election are in favor of the sale, barter or loan of spirituous, vinous or malt liquors, then, in that event, it shall not be lawful to sell, barter or loan any such liquors in any portion of said county where such sale, barter or loan has been prohibited by special act of the Legislature; but such act shall continue in force as if no election had been held; nor shall it be lawful to sell, barter or loan any such liquors in any city, town, district or precinct in

said county where, previous to said election, such city, town, district or precinct had already, by vote, prohibited such sale, barter or loan, unless a majority of those voting in a precinct or precincts, town or towns, city or cities, in which the sale, loan or barter shall be prohibited, voted in favor of such sale, loan or barter, then in the precincts, towns or cities so voting, such sale, loan or barter shall no longer be prohibited; and if, at any election held for the county at large, it shall be found that a majority of the legal votes cast in said election are against the sale, barter or loan of spirituous, vinous or malt liquors therein, yet it shall be lawful to sell such liquors in any city, town, district or precinct in said county where, previous to such election, any city, town, district or precinct had already, by vote, voted in favor thereof, unless a majority of the legal voters voting in such city, town, district or precinct at such election vote against the sale, barter or loan thereof, in which event it shall no longer be continued."

We will now copy the Cammack amendment which may be found on page 86 of the Acts of 1906, and which is now section 2560 of the Kentucky Statutes. It is as follows: (Including the title and enacting clause.)

"An Act to amend section 2560 of the Kentucky Statutes, it being a portion of article 1 of chapter 81 of the Kentucky Statutes, entitled 'Liquors, Intoxicating.'

"Be it enacted by the General Assembly of the Commonwealth of Kentucky:

"Section 1. That section 2560 of the Kentucky Statutes, it being a portion of article 1, of chapter 81, of the Kentucky Statutes, entitled 'Liquors, Intoxicating,' be, and the same is hereby, repealed, and in lieu thereof, it is hereby enacted:

"Section a. No election in any town, city, district or precinct of a county shall be held, under this article, on the same day on which an election for the entire county is held, except the cities of the first, second, third and fourth classes may hold an election on the same day on which an election for the entire county is held. When an election is held in an entire county and the majority of the legal votes cast at said election are against the sale, barter or loan of spirituous, vinous or malt or other intoxicating liquors, then it shall not be lawful to sell, barter or loan any such liquors in any portion of the county. If at such an election for the entire coun-

ty the majority of the legal votes cast are in favor of the sale, barter or loan of any such liquors, such election shall not operate to make it legal to grant license to sell, barter or loan such liquors in any territorial division of such county from which the sale, barter or loan has been excluded by an election held under this article, or by special act, but the status of such territorial division shall remain as if no such election had been held.

"Section b. No election shall be held in any election precinct under this act on the same day on which an election is held for the district or city of which the precinct is a part. If at an election held for such entire district or city, the majority of legal votes cast shall be in favor of the sale, barter or loan of spirituous, vinous or malt liquors, then the status in the several precincts thereof shall remain as it was before said election; but if the majority should be against the sale, then the sale, barter or loan of such liquors shall be unlawful in every portion of said district or city."

"Approved March 14, 1906."

It will be observed that the only change made by the Cammack Amendment were that cities of the first, second, third and fourth classes should be permitted to vote as a unit on the same day that the county voted, and if they do not obtain an order of election on the same day that the county votes as a unit, they cannot remain wet if the county votes dry, even though the city votes wet, as it had no order for a separate election on the same day with the county. The amendment was only of section 2560, Kentucky Statutes; the balance of the act remains as before.

In the case of O'Neal v. Minary, 125 Ky., 571, the court said:

"The act of 1906 simply repeals section 2560 of the former local option law, and substitutes a new provision in its stead. It did not change any of the other provisions of the act."

In that case, which was decided after the Cammack Amendment became effective, the county voted as a unit and Versailles, a fourth class city, did not claim its right to act as a separate unit, therefore the court held that the whole county, including Versailles, acted as one unit and Versailles was bound by it as much as any other precinct so long as that law remained in force, which is forever, unless one of the units takes the proper steps to have a vote after three years.

In the case of May v. Ferguson, &c., 135 Ky., 411 (122 S. W., 208), the court said:

"The county is the absolute unit in all counties save those in which there is situated a city of the first, second, third or fourth classes, and in such counties all of the territory outside of such city limits is an absolute unit, and the city is made a separate unit."

And further on in the opinion it is settled, as in the opinion in the case of O'Neal v. Minary, supra, that if a city of the classes named fails to take a separate vote on the same day, the whole county becomes a unit for three years. But there is nothing in the opinions referred to nor in the Cammack Amendment that would prevent one of the cities named from acting as a separate unit and calling an election three years afterwards, as sections 2554 and 2563 expressly authorize, and which were neither repealed nor changed by the amendment.

For these reasons, the general rule that the same district that votes whisky out must vote it back again, is changed in this instance by the statutes, and I, therefore, dissent.