## Murphy v. Menefee, Judge.

Oct. 28, 1941.

Richard Priest Dietzman and Pat Rankin for appellant.

W. H. W. Reynolds for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

In February, 1937, a local option election was held in Lincoln County on the question of whether the local option law as provided in Chapter 1 of the 1936 Acts of the General Assembly of Kentucky, and perhaps other local option laws then in force, should be adopted in and for said county as a whole, and said election resulted in the affirmative of the question and the sale, barter or loan of spirituous, vinous and malt liquors has been prohibited in Lincoln County in accordance with the provisions of the aforesaid local option law.

In August, 1940, more than three years after the effective date of the local option election mentioned above, the appellant and a number of other voters and residents in Stanford Precinct No. 3 in Lincoln County, filed their petition in the county court clerk's office requesting the Lincoln County Court, or appellee as judge thereof, to enter an order calling an election in Stanford Precinct No. 3 for the purpose of taking the sense of the legal voters of the precinct upon the question of whether

the sale of non-intoxicating malt beverages containing not more than 3.2% of alcohol by weight should be permitted in said precinct.

Upon a hearing and consideration of the petition, appellee, Judge of the Lincoln County Court, entered an order refusing to call the election on the petition of the aforesaid petitioners upon the ground that there is no provision of law authorizing the calling and holding of such an election. Thereupon appellant, suing for himself and in behalf of the other petitioners and proponents of the election, brought this action in the Lincoln Circuit Court against appellee as County Judge, seeking a mandatory injunction to compel him to call the election in accordance with the petition therefor. Appellee demurred to the petition, which demurrer the court sustained, and the appellant failing to plead further his petition was dismissed.

Plaintiff alleged in his petition that the local option election held in 1937 was held pursuant to the authority of the 1936 Act of the General Assembly and in accordance with the laws in force at the time of the holding of the election, and further alleged that pursuant to Chapter 5 of the 1938 Acts of the General Assembly which amended Chapter 1 of the Acts of 1936, appellant and his co-petitioners filed their said petition requesting the appellee, county judge, to call the election now in question. Appellant recognized that previous to the enactment of the 1938 Act amending the 1936 Act there was no authority of law authorizing the election now sought to be had, but he relies upon the 1938 amendment to the 1936 Act, insisting that the former Act so modified the latter as to authorize the holding of the election he now seeks. The chancellor sustained the demurrer to appellant's petition upon the same ground that the county court refused to call the election; namely, that since the local option election held in Lincoln County in 1937 resulted in favor of local option, the county as a whole then became the governmental unit and its status was not changed by the 1938 Act, and any election held thereafter relating to local option, or the sale, barter or loan of intoxicating liquors, would have to be held in the county as a whole rather than in any smaller territory or unit of the county.

The sole question presented is whether Chapter 5 of the 1938 Act repealing, amending, and reenacting Sec-

tion 2554c-1, being Section 1 of Chapter 1 of the Acts of the 1936 regular session of the General Assembly of Kentucky, so modified the 1936 Act as to change the county unit status of Lincoln County which it acquired pursuant to the local option election held in 1937, as to permit a local option election to be held in a voting precinct, district, or any unit less than the county; or, whether the 1938 Act preserved the status of Lincoln County as a governmental unit which was legally dry at the time of the passage of the 1938 Act, and applied only to territory which may become legally dry after the passage of the 1938 Act.

In the 1938 Act, Chapter 5, after defining certain terms, we find this language:

"Provided, however, that the definition of spirituous, vinous or malt liquors and intoxicating liquors as used in this Act shall not apply to malt beverages in any county, city, town, district or precinct not now legally Dry under the Local Option Act, same being Chapter One (1) of the Acts of the one thousand nine hundred thirty six (1936) regular session of the General Assembly of this Commonwealth, *but which shall hereafter become legally Dry.* * * * In any county, city, town, district or precinct *which may* become legally Dry under the Local Option Act, a referendum shall be held whenever a petition is filed * * *." (Our italics.)

Later on appears this language:

"Irrespective of Title of Article headings or the language used, it is the legislative intent to protect territory which is legally dry at the time of the passage of this Act, * * *."

The chancellor wrote an opinion which is a part of the record in which he reviewed and quoted certain language contained in the Act, substantially the same as we have quoted above, and further wrote as follows:

"This Act is an amendment to the Local Option Act of 1936, Section 2554c-1 of that Act. That section is made up of definitions, among others, defining 'spirituous, vinous, or malt liquors,' and it defines 'intoxicating liquor' as being, among others, any spirituous, vinous, malt or fermented liquids containing one per centum or more of alcohol by

volume and fit for use for beverage purposes. It will be seen that the 1938 amendment provides for malt beverages containing not more than 3.2% alcohol by weight to be legally sold if the vote is the affirmative in the territory to which the referendum applies. As I understand it, alcoholic content of 3.2% by weight is equivalent to 4% of alcohol by volume. Louisville & N. R. Co. v. Falls City Ice & Beverage Co., 249 Ky. 807, 61 S. W. (2d) 639, 640 [91 A. L. R. 509]. * * *

"Under this act, what is the territorial unit that the legislature meant should be entitled to hold the referendum? Local Option has been in force in Lincoln County since April 27, 1937, under an election for the entire county held in February 1937. The petition alleges this fact. Under the 1936 Local Option Act, not affected by the present amendment, no election may be held in the same territory oftener than once in every three years. Section 2554c, 2554d, Kentucky Statutes. Plaintiff is seeking to force the calling of an election, the referendum of the 1938 amendment, not for the entire county, but for only one precinct in it. I do not think this amendment, under these circumstances, permits this to be done.

"In Edwards, Judge, v. Porter, 141 Ky. 314 [132 S. W. 582], the court had before it the 'Cammack Act' for construction. Logan County had voted for Local Option under that law. Thereafter, more than three years after that election was held, it was sought to hold a local option election in the city of Russellville. Holding that such election could not be held, the Court said:

" 'By Section 2554, Kentucky Statutes, an election may be held in a county, city, town, district or precinct for the purpose of taking the sense of the legal voters upon the proposition whether or not spirituous, vinous, or malt liquors shall be sold therein. By Section 2563, it is provided that the election, or elections, provided for shall not be held in any county, city, town, district or precinct oftener than once in every three years. Similar provisions are found in the local option statutes which have been adopted in many of the States, and the rule is that when the law had been put into effect by the

vote of the people of a certain territory it can only be put out of force by the vote of the same territorial division which put it into effect.' In 19 Am. & Eng. Ency. of Law, 511, the rule is thus stated:

" 'When a statute provides that after the lapse of a specified time the question of revoking an order declaring prohibition to be in force by virtue of a prior adoption may be submitted, the resubmission must be to the voters of the entire territory embraced in the former election.'

"To same effect see 23 CYC, 105, 1, Woolen & Thornton on Intoxicating Liquors, Section 549. This court adopted the rule in Commonwealth v. King, 86 Ky. 436 [6 S. W. 124], and that opinion was approved in Lafferty v. Huffman, 99 Ky. [80] 94 [35 S. W. 123, 32 L. R. A. 203].

"Under the above authority, when Logan county as a unit put the local option law in force, it remains in force until Logan county again votes on the question, unless there is something in the act putting a city of the fourth class on a different plane from other towns or districts in the county.

"The Cammack Act was before the court in May, etc., v. Ferguson, etc., 135 Ky. 411 [122 S. W. 208, 209]. Construing the law, the court in the course of the opinion said:

" 'In other words, where no prohibitory laws are in force in the county, any magisterial district, voting precinct, or town of any class may vote to establish prohibition within the limits of such magisterial district, voting precinct, or town; but, where prohibition has been established in the entire county, a different rule obtains. A unit has been established, and the vote can never again be taken in any subdivision of that county other than in some one of the cities belonging to the excepted class, unless it is taken in the entire county.'

"In Board of Trustees, etc., v. Scott, 125 Ky. 545, 101 S. W. 944 [948], speaking of the Cammack Act, and elections under its provisions, the court said:

" 'If a precinct votes that prohibition shall prevail within its territory, it is not competent for any

other unit to gainsay the matter. If, however, the precinct votes against prohibition, that leaves the question, so far as it is concerned, as it was before any vote was ever taken on it. But, if the town or city which includes the precinct in question subsequently votes in favor of prohibition, the whole town or city thereby becomes dry. Or, if the county subsequently votes dry, the same result as to the county is attained. But if the county or town vote wet, and the precinct has previously voted dry, the precinct controls for itself. Thus each unit for itself has the option of putting the prohibition law into effect within its territory, and no larger or smaller unit can prevent it.'

"In Long v. Smith, 281 Ky. 512, 136 S. W. (2d) 789 [790], the local option law of 1936 was involved. Under this law an election had been held in Grayson county in June 1937, resulting in a majority against prohibition. In September 1939, an election was had in Leitchfield, in that county, on the proposition of whether local option should be adopted by the city, and it was favorable to prohibition. By that suit it was sought to have this city election held invalid because held within less than three years from the county election. In support of the attack upon it, the contention was made that under the 1936 law no election may be held in the same territory oftener than once in every three years. The court upheld the election in the city. In the course of the opinion, it is observed that the 1936 local option law is substantially a re-enactment of the local option law in force prior to national prohibition, and that Section 2554c-17, stating the effect of adoption of local option by a county, is a re-enactment in substance of the 'Cammack County Unit Act.' The opinion then quotes with approval from Board of Trustees, etc., v. Scott [supra] including that just inserted from that case, and the following statement from it:

" 'Under the statute that was repealed by this act, a vote against prohibition was given the same effect as a vote in favor of it; but the present act intended to give a different effect, by allowing each unit a chance—without regard to any previous vote taken in any other unit—to adopt prohibition. So,

without reference to when the vote was taken in a city or precinct, which resulted in a majority against prohibition, any other unit, either including or included by the territory just mentioned, may vote for itself on the proposition, and, if it votes in favor of it, prohibition in counties of the class to which Henry and Lincoln belong becomes effective in that territory.'

"The opinion in Long v. Smith [supra] cites Eggen v. Offutt, 128 Ky. 314, 108 S. W. 333, involving a local option election under the Cammack law held in 1906. It was in favor of the sale of liquors. Within less than three years an election was held in one of the magisterial districts of that county, by which that district adopted local option. The point in issue was whether this district election was void because of the previous county election, the argument being that the county election was a bar to holding an election in a territorial division of the county, within the three year period. The court decided it was not a bar, as it was not for the same territory as the county election; that if the county had voted prohibition, then a later local option election for the smaller division of it would not have been valid; but having voted wet, the right of the smaller unit to have such an election, and within the three year period, was not barred. This holding is in harmony with the other cases already referred to with regard to the construction of the Cammack Act. The opinion in Long v. Smith [supra] concludes as follows:

" 'That case [the Egger case] is controlling here. We see no distinction between the present act which provides that no election shall be held in the same territory oftener than once in every three years and the act construed in the Eggen case which provided that local option elections should not be held for any county, town, district or precinct oftener than once in every three years. It was held, in effect, that this language was equivalent to saying that no election should be held in, the same territory oftener than once in every three years. As was said in the Eggen and Scott cases, the territory in which the elections occurred was not the same or identical territory. *In reenacting substantially the*

*provisions of the old local option law, the General Assembly had before it the construction placed on that act by this court, and if it had desired a different result it undoubtedly would have said so in plain and unmistakable language.'* (My emphasis.)

"From these, as well as other cases not now referred to, it is plain that it has been the settled public policy of this State, from the time of the passage of the Cammack Act down to the 1936 local option law and including it, that a county election favorable to prohibition fixed the territorial unit that thereafter, and upon the expiration of the required period, should have the right again to vote upon that question, and that unit was the county. The unit for election purposes had been established, and no vote could be taken in any subdivision of it separately from the county. When the Legislature enacted this 1938 amendment to the 1936 law, it knew this; knew the terms of the 1936 law, that it was substantially a reenactment of the Cammack Law, and knew the construction that had been given the latter act. And so when the 1938 amendment provides for a referendum to be held for a county, city, town, district, or precinct, it must have meant that only that territorial unit would be entitled to have such a referendum whose status under the 1936 act entitled it to have a local option election. The referendum, by express terms, could be had only in dry territory. As we have seen, a precinct dry by reason of the county including it having voted prohibition, has no voice in invoking a local option election, unless such an election is for the entire county. Its identity as a separate voting unit for local option purposes, has been merged in that of the county. If the Legislature proposed to change this long established public policy of preserving for the entire county, when it had voted dry, the exclusive right, as compared with any of its territorial subdivisions, of determining whether there should be another local option election within its borders, certainly it should have made that purpose unmistakably plain by the terms of the amendment. The provision that the sense of the legal voters of the county, city, town, district or precinct may be taken, does not reveal any such purpose on the part of the

Legislature. That provision must be viewed in the light of the previous local option laws and the construction the court had placed upon those laws. And when that is done, it can not reasonably be concluded that this provision meant that the town, city, district or precinct was thereby intended to be relieved from subordination, on the question of a separate election, to the county as an entirety, so carefully preserved theretofore.

"The plaintiff contends, as I understand counsels' brief, that as 3.2% beer by weight must be regarded, in view of the finding in the Falls City Ice and Beverage opinion, previously referred to, as non-intoxicating, therefore it is not offensive to the public policy of the State to permit in a dry county any precinct or district to have a separate election upon whether it may legally be sold within the district or precinct. The argument does not impress me.

"The county here has voted to have local option under the 1936 law. By this election it has declared that malt beverages containing 1% or more by volume of alcohol may not legally be sold in the county. That is the status it has established for itself. That is the status the public policy of the State seeks to protect by declaring that no subdivision of the county may have a local option election separately from the county. The unit for election purpose has become fixed; the county, and only the county as an entirety, has the right to have an election to determine whether that status shall be changed. Difficulties of a serious nature in administering and enforcing the prohibition law in a dry county would result if one or more of its districts or precincts voted out prohibition. That is one of the reasons, if not the principal one, for this public policy of not permitting such a separate election in some of its subdivisions. To say that the county is entitled to have that status preserved and protected from interference by a different status being set up in one of its subdivisions, is meaningless if any of its precincts or districts is to have the right to legalize within its boundary the sale of malt beverage much stronger in alcoholic content than that which the county has made illegal.

128

"It is, I think, a fair and reasonable conclusion that if beer of that alcoholic content, 3.2% by weight, were permitted to be sold legally in any precinct of a dry county it would most likely make it harder effectively to enforce prohibition in the remainder of the county, and thus tend to break down its status that it had established for itself. And in this connection it is worthy of notice that when the 1936 local option law was enacted defining intoxicating liquors as including malt beverages containing by volume as much as 1% of alcohol, the Legislature was aware of the decision in the Falls City Ice and Beverage Company case, finding that beer containing as much as 3.2% of alcohol by weight was not intoxicating, which was decided in 1933. Presumably the Legislature fixed a lower alcoholic content because it considered that this would help in the enforcement of prohibition in local option territory."

We think that the opinion of the chancellor is sound and we hereby adopt so much of it as is copied herein as the opinion of this court.

The 1938 Act is also assailed as being unconstitutional for various alleged reasons. But since we have determined that the 1938 Act preserved the previous status of Lincoln County which was legally dry before the passage of the 1938 Act and for that reason there is no authority of law for the holding of an election in any precinct or other territory less than the whole county, we need not determine the constitutionality of the Act, which question is expressly reserved.

Judgment affirmed; whole court sitting.