DENNISTON, COUNTY JUDGE, *v.* RIDDLE.

4-8058                                    199 S. W. 2d 308

Opinion delivered January 13, 1947.

1040

*Rains & Rains,* for appellant.

*Wilson & Starbird,* for appellee.

ED. F. McFADDIN, Justice. On June 27, 1944, there was a county-wide local option election in Crawford county, Arkansas, under the provisions of Initiated Act No. 1 of 1942 (Acts of 1942, p. 998); and a majority voted against the manufacture or sale of intoxicating liquors. There has been no subsequent county-wide election in Crawford county.

On August 3, 1946, a petition was filed in the Crawford County Court purporting to be signed by more than 15 per cent. of the qualified electors of Ward No. 1 in the City of Van Buren in Crawford county, praying for a local option election in said Ward No. 1, under the

provisions of said Initiated Act No. 1 of 1942. Appellees, Riddle *et al.*, appeared as remonstrants in the County Court, but their objections were disregarded. Then, Riddle *et al.* filed in the Circuit Court of Crawford county, their petition for writ of prohibition to prohibit the County Judge and County Court from ordering any election in said ward one, in the City of Van Buren. The Circuit Court issued the writ of prohibition; and the County Judge has appealed.

In legal phraseology, this appeal necessitates a construction of Article VII of Act No. 108 of 1935, and a determination of the effect of Initiated Act No. 1 of 1942 on the said 1935 act. In the language of laymen, this appeal presents for determination this question: If a county as a whole has ever once voted "dry," can any subdivision of the county ever thereafter have a separate vote on the "wet v. dry" issue independent of a countywide vote? We answer the question in the negative; and now we proceed to give the reasons impelling such answer.

I. *We Borrowed Our Local Option Law of 1935 from the State of Kentucky.* Act No. 108 of 1935 is known as the "Thorn Liquor Law." It has been considered by this court in several cases, some of which are: *Mondier v. Medlock*, 207 Ark. 790, 182 S. W. 2d 869; *Hughes v. State*, 209 Ark. 125, 189 S. W. 2d 713; *Winfrey v. Smith*, 209 Ark. 63, 189 S. W. 2d 615; *Johnston v. Bramlett*, 193 Ark. 71, 97 S. W. 2d 631; *McKeown v. State*, 197 Ark. 454, 124 S. W. 2d 19; *Phillips v. Mathews*, 203 Ark. 100, 155 S. W. 2d 716; *Bennett v. Moore*, 203 Ark. 511, 157 S. W. 2d 515. Article VII of Act 108 of 1935 consists of 16 sections, and is the Local Option Election Law. It may be found in §§ 14147-14169, inclusive, of Pope's Digest of 1937 (omitting only § 14155).

A comparison of these sections in Pope's Digest with § 2554 to § 2568, inclusive, of the Kentucky Statutes of 1909 leads to the inevitable conclusion that the Arkansas Local Option Election Law of 1935 was borrowed from

the Kentucky law. The aforesaid §§ 2554 to 2568, inclusive, of the Kentucky Statutes of 1909 were construed by the Kentucky Court of Appeals on December 16, 1910, in the case of *Edwards v. Porter,* 141 Ky. 314, 132 S. W. 582. Russellville was a city in Logan county, Kentucky. The entire county held a local option election on December 8, 1906, and voted "dry." Then, on December 9, 1909, the City of Russellville sought to have a local option election for the city, separate from the county. The Kentucky court held that the city could not have a separate election even after the lapse of the three-year period, citing the Kentucky statutes 2554 to 2568, inclusive, and saying:

"By § 2554, Ky. St., an election may be held in a county, city, town, district, or precinct for the purpose of taking the sense of the legal voters upon the proposition whether or not spirituous, vinous, or malt liquors shall be sold therein. By § 2563 (Russell's St., § 4062) it is provided that the election or elections provided for shall not be held in any county, city, town, district, or precinct oftener than once in every three years. Similar provisions are found in the local option statutes which have been adopted in many of the states, and the rule is that, when the law had been put into effect by the vote of the people of a certain territory, it can only be put out of force by the vote of the same territorial division which put it into effect. In 19 Am. & Eng. Encyc. of Law, 511, the rule is thus stated: 'When a statute provides that after the lapse of a specified time the question of revoking an order declaring prohibition to be in force by virtue of a prior adoption may be submitted, the resubmission must be to the voters of the entire territory embraced in the former election.' To same effect, see 23 Cyc. 105; 1 Woolen & Thornton on Intoxicating Liquors, § 549. This court adopted the rule in *Commonwealth* v. *King,* 86 Ky. 436, 6 S. W. 124, 9 Ky. Law Rep. 653, and that opinion was approved in *Lafferty* v. *Huffman,* 99 Ky. 80, 35 S. W. 123, 32 L. R. A. 203. Under the above authorities, when Logan county as a unit put the local option law in force, it remains in force until Logan county again votes on the question, . . ."

Thus, it is clear that, under the Kentucky statutes and the decision of the highest court of that state construing it, once a county votes "dry," no part of the county can thereafter have a separate local option election independent of the entire county.[1]

II. *When We Borrowed the Kentucky Statute, We Borrowed Also the Decisions of the Highest Court of That State, Already Rendered, Construing the Statute.* In the case of *Conn. General Life Ins. Co.* v. *Speer,* 185 Ark. 615, 48 S. W. 2d 553 (decided April 18, 1932), Chief Justice HART, speaking for this court, said: "It is the settled law of this state that, where the Legislature adopts the statute of another state, which has been construed by the courts of that state, it will be held that the interpretation was also adopted. *Neb. National Bank* v. *Walsh,* 68 Ark. 433, 59 S. W. 952, 82 Am. St. Rep. 301; *Hanson* v. *Hodges,* 109 Ark. 479, 160 S. W. 392; *McIlroy* v. *Fugitt,* 182 Ark. 1017, 3 S. W. 2d 719, 73 A. L. R. 1223."

In the case of *State v. Ark. Brick & Mfg. Co.,* 98 Ark. 125, 135 S. W. 843, we said: "The case last cited comes with especial force, as it arose in Kentucky after her adoption of a code which was subsequently adopted in Arkansas. When one state adopts the law of another state, it is quite generally held that constructions of the adopted law go along with it."

The holding of the Arkansas Supreme Court on this point is the general holding. In 50 Am. Jur. 571, cases from many jurisdictions are cited to sustain this text: "In the case of a statute adopted from another jurisdiction, the Legislature may be presumed to have been familiar with decisions of the courts of the foreign jurisdiction having a bearing on the operation of the statute, and in the absence of an expression of legislative intention to the contrary, to have adopted the statute in view

---

[1] Persuasive—but not binding—is also the fact that the present law of Kentucky (Chap. 1 of the Acts of 1936 and Chap. 5 of the Acts of 1938) contains the provision as to local option elections, and the highest Kentucky court holds that a county-wide "dry" vote prevents a subsequent vote by any smaller unit thereof. *Murphy* v. *Menefee,* 288 Ky. 119, 155 S. W. 2d 753; *Neal* v. *Manning,* 289 Ky. 199, 158 S. W. 2d 129; *Nevels* v. *Commonwealth,* 290 Ky. 181, 160 S. W. 2d 351.

of the construction put upon it by the courts of such jurisdiction, and with the intention that the adopted statute should receive the same interpretation. It is therefore proper, in interpreting a statute adopted from another jurisdiction, to consider the interpretation of the act by the courts of the state or country from which it was adopted. Indeed, it is the well-settled general rule that when a statute is adopted from another state or country the judicial construction already placed on such statute by the highest courts of the jurisdiction from which it is taken is treated as incorporated therein so as to govern its interpretation."

So, it is clear that, under the Thorn Liquor Law of 1935, no part of Crawford county could have a local option election independent of the entire county, since the county voted "dry" in 1944.

III. *There Is Nothing in Initiated Act No. 1 of 1942 Which Repeals Those Parts of the Thorn Liquor Law of 1935 Here Involved.* This Initiated Act No. 1 of 1942 has been before this court in numerous cases, some of which were collected and listed in the recent case of *Tollett v. Knod, ante,* p. 781, 197 S. W. 2d 744, decided December 2, 1946.[2] A study of this Initiated Act No. 1 of 1942 shows that its purpose was to aid the cause of the "drys," and not to aid the "wets":

(a) It will be recalled that under the Thorn Liquor Law the sale of liquor was made legal in the entire state, and the burden of having local option elections was thus placed on the "drys." Under § 14147, Pope's Digest, 35 per cent of the qualified electors were required to sign the petition asking for the election; whereas, under § 1 of the Initiated Act No. 1 of 1942 the requirement was reduced to 15 per cent of the qualified electors.

(b) Section 2 of the Initiated Act No. 1 of 1942 says that, if a majority votes for the manufacture or sale of

---

[2] One of the cases involving this Initiated Act No. 1 of 1942 is *Van Gundy* v. *Caudle,* 206 Ark. 781, 177 S. W. 2d 740. In headnotes 1 and 3 in the official Arkansas Reports, the reporter has referred to this as "Initiated Act No. 1 of 1942 of Washington County." The words "of Washington County" should not have been included in the headnotes.

intoxicating liquors "within said designated territory," then it shall be lawful for the Commissioner of Revenues to continue to issue licenses "as if no election had been held"; but, if a majority votes against the manufacture or sale of intoxicating liquors, then it shall be unlawful for the Commissioner of Revenues to issue any licenses "for at least two years, and thereafter unless the prohibition shall be repealed by a majority vote . . ." The words "the prohibition" must certainly be construed to be the prohibition which had been voted "within said designated territory"; and, since it was a county-wide prohibition, it would necessarily follow that only a county-wide vote could repeal the prohibition. The words "within said designated territory" admit of no other construction.

As a further reason for our holding that Initiated Act No. 1 of 1942 does not repeal the Thorn Liquor Law on the point here at issue, we refer to the language of § 6 of the said Initiated Act No. 1, which says:

"It is hereby expressly declared that this act shall be cumulative to the liquor laws now in force in this state . . ."

IV. *The Question Here Presented Has Received the Attention of Courts of Other States, and the Weight of Authority, as Reflected by Decisions in Other States, Is in Accord With the Result in This Case.* In 33 C. J. 636, cases from many jurisdictions are cited to sustain this statement regarding local option elections: "Where the prohibitory law has been put in force in an entire county or other division of the state, it is generally held that a city or town therein cannot hold a separate election to repeal the law as to itself, that is, the election to repeal the law cannot be called for a territory forming only a part of that for which the first election was held."

And in 48 C. J. S. 222 many recent cases are cited to sustain this statement: ". . . it is generally held that a city or town cannot hold a separate election to repeal the law as to itself, that is, the election to repeal the law cannot be called for a territory, forming only a

part of that for which the first election was held, and, where such an election is ordered, the order is a nullity and the election void, notwithstanding the order has never been set aside."

And in 30 Am. Juris. 352, the rule is stated: "Likewise, when the unit has adopted prohibition, it remains in force until it is revoked by a vote of the adopting territory as a whole, unless the statute confers on some portion of the unit the right to revoke independently of the whole."

To summarize: There was a county-wide local option election in Crawford county on June 27, 1944, and a majority voted against the manufacture or sale of intoxicating liquors; and thereafter—even after the lapse of two years or any other period of time—no subdivision in Crawford county may ever have a vote on the liquor question independent of the entire county. So, we conclude that the Circuit Court correctly issued the writ of prohibition in the case at bar, and the judgment of the Circuit Court is in all things affirmed.