The Honorable Mary Anne Salmon State Senator #29 Heritage Park Circle North Little Rock, AR 72116-8528
Dear Senator Salmon:
This is in response to your request for an opinion concerning the number of signatures required on a petition for a local option election, commonly referred to as a "wet-dry" election. You state that a business in your district is interested in petitioning to change a "dry" area to "wet," but the owners are confused as to the proper number of signatures due to a perceived inconsistency in the statutes.[1] Specifically, you note that A.C.A. § 3-8-202 states that 15% of the qualified electors of the affected area may petition for a local option election, whereas A.C.A. § 3-8-205 states that a petition must contain the signatures of 38% of the area's qualified electors. You have asked me to clarify what percentage applies in order for the question to be placed on the ballot at the November general election. *Page 2 
RESPONSE
In my opinion, a petition for a local option election must be signed by 38% of the qualified electors of the territory affected. This is clear from the legislative history of the relevant statutes.
The petition requirement was first set at 35% under the Thorn Liquor Law — Act 108 of 1935 — a comprehensive act that legalized the manufacture and sale of intoxicating liquors in Arkansas after the Twenty-First Amendment's repeal of Prohibition. See Denniston,supra at n. 1, 210 Ark. at 1044 (recalling that "under the Thorn Liquor Law the sale of liquor was made legal in the entire state, and the burden of having local option elections was thus placed on the `drys.'") T h i s 3 5 % requirement is still on the books, see A.C.A. § 3-8-302(a) (Repl. 1996); but it clearly is ineffective. An initiated act adopted by the people at the 1942 general election — Initiated Act 1 of 1942
— permitted 15% of the qualified electors of a "designated county, township, municipality, ward, or precinct" to petition the county court for a wet-dry election on the question of the legal sale of liquor "within the designated territory." See Init. Meas. 1942, No. 1, § 1 (codified, as amended, at A.C.A. § 3-8-205 (Supp. 2007)).[2] The petition requirement was therefore reduced from 35% to 15% in 1942.Accord Yarbrough v. Beardon, 206 Ark. 553, 555, 177 S.W.2d 38 (1944) (noting that Initiated Act 1 of 1942 "amended the liquor laws so as to reduce the necessary number of signatures on the petition from 35 percent of the legal voters to 15 per cent."); Denniston, supra
("[U]nder [section] 1 of the Initiated Act No. 1 of 1942 the requirement was reduced to 15 per cent of the qualified electors.").
The 15% requirement under Initiated Act 1 was increased to 30% byAct 266 of 1985. The 1985 Act was entitled:
 An Act to Amend Sections 1 and 2 of Initiated Measure No. 1 of 1942, as Amended, [Ark. Stats. 48-801 and 48-802] to Provide that the Question of the Manufacture and Sale of Alcoholic Beverages May be Submitted to the Electors of a Designated Area on Petition *Page 3 
of Thirty Percent (30%) of the Qualified Electors of the Area and to Provide that Once the Issue Is Submitted to the Electors of a Designated Area, the Issue Shall not Again be Submitted to the Electors of such Area for a Period of Four (4) Years. . . .
The percentage was changed again in 1993, under Act 243 of that year, which amended A.C.A. § 3-8-205 to establish the current 38% requirement.See Acts 1993, No. 243, § 1. Section 3-8-205 currently provides in relevant part:
 When thirty-eight percent (38%) of the qualified electors shall file petitions with the county clerk of any county within this state praying that an election be held in a designated county, township, municipality, ward, or precinct to determine whether or not licenses shall be granted for the manufacture or sale or the bartering, loaning, or giving away of intoxicating liquor within the designated territory, the county clerk within ten (10) days thereafter shall determine the sufficiency of the petition.
A.C.A. § 3-8-205(a)(1) (Supp. 2007).
The confusion on this score understandably arises from the fact, as you have noted, that another Code section — A.C.A. § 3-8-202 — continues to refer to a 15% requirement. This section states:
 It is expressly declared that § 3-8-201 — 3-8-2-03 and 3-8-205 — 3-8-209 shall be cumulative to the liquor laws now in force in this state. These sections shall at all times be construed so as to permit, upon petition of fifteen percent (15%) of the qualified electors in any area to be affected, the qualified voters therein at one (1) election to determine whether or not all alcoholic beverages, including all kinds and types of whiskey, beer, and wine, shall be manufactured or sold, bartered, loaned, or given away therein.
A.C.A. § 3-8-202 (Repl. 1996).
This provision is the codification of Section 6 of InitiatedAct 1 of 1942 which, like Section 1 of the 1942 initiated act, reflects a 15% petition requirement. The 15% language obviously cannot be squared with the 38% requirement under A.C.A. § 3-8-205, as amended. Accordingly, notwithstanding its continued *Page 4 
codification, the 15% requirement under A.C.A. § 3-8-202 has been impliedly amended, in my opinion. Although amendments by implication are not favored in construing statutes, see Cummings v. Washington CountyElection Com'n, 291 Ark. 354, 724 S.W.2d 486 (1987), previous statutes may be amended by implication necessarily resulting from subsequent legislation, where "the terms of the subsequent act are so inconsistent with the provisions of the prior law that they cannot stand together."Arnold v. City of Jonesboro, 227 Ark. 832, 834, 302 S.W.2d 91 (1957).
The legislature in 1985, and then again in 1993, amended A.C.A. §3-8-205 regarding the requisite percentage of qualified electors on a local option petition. In my opinion, these acts impliedly amended A.C.A. § 3-8-202 in this respect. The number was set at 38% in 1993. This is the controlling percentage, in my opinion.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] I note that you have referred to the area as one of North Little Rock's five dry "districts." I am not specifically familiar with these "dry" areas, but I assume they were properly voted dry at some point pursuant to A.C.A. § 3-8-205 (Supp. 2007), which authorizes subdivisions within a "wet" county to vote "dry." See Op. Att'y Gen. Nos. 96-332 and 88-199. Assuming that to be the case, then any such area of a "wet" county that was previously voted "dry" can subsequently vote "wet," as long as the petition is signed by qualified voters of that designated territory, and the election is held in such territory. See A.C.A. §3-8-205(a)(1).
It should perhaps also be noted that of course the converse is not true. That is, under the local options laws, once a county votes "dry," a subdivision within the county cannot thereafter vote "wet." See Carterv. Reamey, 232 Ark. 211, 335 S.W.2d 298 (1960); Tabor v. O'Dell,212 Ark. 902, 208 S.W.2d 430 (1948); Denniston v. Riddle, 210 Ark. 1039,199 S.W.2d 308 (1947). Instead, a county-wide vote must again be held in that instance to repeal the prohibition. Id.
[2] If a majority votes for the manufacture or sale of intoxicating liquors, then the issuance of licenses or permits will continue to be lawful "as if no election had been held." A.C.A. § 3-8-208(a) (Repl. 1996). But a negative vote will make such licenses or permits unlawful "unless and until the prohibition shall be repealed by a majority vote. . . ." Id. at (b). In this regard, as noted above, once a county votes "dry," a subdivision within the county cannot thereafter vote "wet."